151 P.2d 337

## FRKOVICH v. PETRANOVICH.

### No. 4826.

Supreme Court of New Mexico.

May 18, 1944.

Rehearing Denied Sept. 23, 1944.

Marron & Wood, W. A. Keleher, and Theo E. Jones, all of Albuquerque, for appellant.

Mechem & Hannett, of Albuquerque, for appellee.

BICKLEY, Justice.

From the court's findings of fact which are supported by substantial evidence, the following we deem sufficient recital to an understanding of the case.

The plaintiff executed a promissory note and a real property mortgage to secure the same, both in favor of the defendant. The real property described in the mortgage was the community property of the plaintiff and her husband, Max Frkovich, who at the time of the execution of the note and mortgage was an incompetent person, for whose estate Alfred Myers was the appointed and acting guardian. At that time and up to and including the date of the trial herein, there had never been a head of the community appointed nor had there been application made for such an appointment. The note and mortgage were so prepared as to be executed by plaintiff and also by the guardian of the property of Max Frkovich, but the guardian failed or refused to execute them. The plaintiff at the time of the execution of the papers by her was informed by her attorney, George E. McDevitt, that it would also be necessary for Alfred Myers as guardian of the estate of Max Frkovich to sign them in order for a valid obligation of the community to be created. The debt involved was a community obligation and not the individual or personal obligation of the plaintiff and it was the intent or purpose of plaintiff to recognize the obligation of the community and to create a lien therefor against the community property and she was not personally or individually liable for such community indebtedness and it was not her intent or purpose in executing the note and mortgage to assume or agree to pay the same as her personal or individual obligation. Other uncontroverted facts which illumine the discussion will be later mentioned.

The court concluded as a matter of law that the note and mortgage constitutes a cloud upon the title of the real property described therein, and that the instruments should be ordered delivered up and canceled by the court. A decree was entered carrying into effect the conclusions of law.

We have given careful consideration to all of appellant's assignments of error. We have found them without merit, and only find it necessary to discuss a portion of them.

The most important question involved is the construction of our statutes relating to transfers or conveyances of community real property of husband and wife while the husband is insane.

Since our decision is to be one of affirmance, it might be that an answer to the contentions of the able counsel for defendant could be found short of our present discussion of these statutes, but since our understanding of the statutes is not in accord with the assumptions of counsel for the par-

ties, we think it may be beneficial to express fully our views.

In Jenkins v. Huntsinger, 46 N.M. 168, 125 P.2d 327, we had some of these statutes under consideration, and it was held that under the statute a husband's deed of community property, in which the wife did not join, was absolutely void. The contentions in favor of construing the word "void" in the statute as meaning "voidable" were thoroughly considered and found to be without merit. The idea of ratification by subsequent events or acts of the parties was not looked upon with favor.

Counsel for the appellant say they have no quarrel with that decision but assert that the section of our Community Property Act (section 65-403, N.M.S.A.1941) making void any transfer or attempted transfer of community real property by either husband or wife alone is not applicable to the mortgage here involved. We quote from her brief in chief:

"Our contention is that the voiding clause in the 1915 Amendment applies only *while the husband is head* of the community. When he has been duly adjudged incompetent on the wife's petition and she applies to be put in control of the property, her right to be adjudged head of the community becomes absolute and not discretionary under the Statute. Thereafter any conveyance of community real estate, made by her *alone,* is governed by Sec. 65-408, is not void but, at most, subject to the court's approval under that Section. Such, we submit, was plaintiff's status when she

executed this mortgage. So far as we have been able to discover, this question has not been presented to nor passed on by this court. It involves merely the construction and application of our special statute in the light of its history.

"Our present law of community property originated in Chapter 37 of the Laws of 1907. We respectfully submit that a careful reading of the statute in connection with its history will sustain our contention of its necessity as applied to the facts here involved and reasonably excludes any other construction.

"The powers of the husband and wife as heads of the community are covered in separate sections and parts of the Act of 1907. They are markedly different.

"(a) *Husband's Power:.*

"Sec. 16 of the 1907 Act, was headed 'Relating to the power of the husband over the community property'. Before it was amended in 1915, it read as follows: 'The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate; Provided, however, That he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto, and; Provided, also, that no sale, conveyance, or incumbrance of the homestead, which is then and there being occupied and used as a home by the husband and wife, or which has been declared to be such by a written instrument signed

and acknowledged by the husband and wife and recorded in the county clerk's office of the county, and furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property shall be made without the written consent of the wife.'

"(b) *Wife's Powers:*

"The Act of 1907, for the first time in our statutes, contained provisions under which the wife might become head of the community. They are covered by the last five sections of the Act, now appearing as Secs. 65-405 to 65-409, 1941 S.A. Sec. 65-405 provides that 'whenever the husband is *non compos mentis*' and in certain other contingencies, the wife may present a petition, duly verified, to the District Court, giving a description of all community property, both real and personal, and the facts which render the husband incapacitated to administer the community property, and praying that she may be substituted for him. Sec. 65-408 provides that upon hearing, 'the Court *shall* render judgment * * * either dismissing said petition' (i. e., if the grounds charged were not sustained) 'or *adjudging* the wife thereafter *to be* the head of said community, *with full power* of managing, administering and *disposing* of the community property, either real or personal, with such limitation therein as to the court may appear to be in furtherance of justice.'

"These sections declaring the wife's power on the husband's disqualification have never been amended since the original enactment.

"The Section relating to the husband's power was amended by Chaper 84 of the Laws of 1915, which Chapter was entitled 'An Act to Amend Section 16 of Chapter 37 of the Session Laws of 1907, Relating to the *Power of the Husband* over the Community Property.' It changed Section 16 to read as follows: 'The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, Provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, except, that the husband may convey directly to the wife or the wife to the husband without the other joining in the conveyance.'

"By the 1915 amendment it was made to read as now with an amendment in 1927, not material to this question, and for the first time carried the provision that an attempted conveyance or alienation (of real property) by either husband or wife without the other was void. Note that the 1915

amendment was to the section defining the *husband's power* while head of the community by requiring that the husband and wife must join in all deeds and mortgages affecting real estate; and that any transfer or conveyance to be made of the real property by either alone shall be void and of no effect; *leaving* the section defining the *wife's powers* when she becomes head of the community as 'full power of managing, administering and disposing of the community property, either real or personal.' "

Defendant elsewhere argues further:

"Plaintiff's original petition affirmatively showed that her husband had no separate estate; all was community; that he was mentally incompetent to safeguard that property, and the court was asked to provide the proper remedy. True, she then asked that her son be appointed for the purpose, and the court appointed him. Counsel who prepared that petition, of course knew the facts and knew what was desired was that the community should have a *head*. He apparently mistook the remedy as being a guardianship. Nevertheless, the petition that he drew definitely showed and apprized the court that it was the head of that community to manage the property that was desired, call him guardian or what you may, that to proceed under the guardianship sections would give them no relief at all under the facts here involved. It is true that in that petition she did not ask that she be adjudged to be head of the community, but instead asked that her son be appointed for the purpose of managing this community property, and the court so appointed him. Her son, doubtless, by that appointment at her re-quest, became authorized to act as her agent in managing the community property, and so long as she acquiesced she would be estopped to deny his authority so to do.

"Counsel for both sides, throughout this litigation, have openly asserted and taken the position that the appointment by the court of a guardian for the purpose of managing the community property, on a petition which showed the husband was incompetent and had no other property, was void, and that, at least under the facts shown as to this case, the court could adjudge no one but the wife to be head of the community. She did become dissatisfied with her son in August of 1941 and then petitioned the court to remove him and appoint her in his place. Without waiting to be removed, the son resigned, and the court, instead of appointing the petitioner to manage the community property, appointed Myers for that purpose. After that act the plaintiff executed and delivered the note and mortgage.

"If the failure of the plaintiff to ask her own appointment to manage the property in her original petition constituted a defect in her petition to be treated as head of the community because of that failure to request, then when she did, in the same proceeding, make the request that she be so appointed, every fact required by the

statute to be present, then existed, and it became the duty of the court to adjudge her head of the community. The court's act in appointing Myers was void. That could be done, if at all, where both husband and wife were adjudged incompetent, a condition not existing here. That was the situation when the note and mortgage in question were executed.

"Counsel's argument leads him to the necessary conclusion stated on page 10 of their brief, that though the wife be adjudged head of the community she must still sign any conveyance twice—once as wife and once as head of the community—to make it good. Note he does not claim the husband, or some guardian appointed for him, must sign. This seems to us an absurdity, yet a necessary result if his argument be sound. No such condition arises if our construction of the statute be adopted. When the wife becomes head of the community, her husband being adjudged incompetent, she has, under the statute, complete power to convey the community, real and personal, property without the husband's joining, unless the court puts some restriction on her power under the provisions of the statute relating to her adjudication.

"It will be noted that throughout this case defendant again and again brought to the court's attention that under the plaintiff's claim, no one was present as a party representing the community, yet the plaintiff persisted in allowing that question to remain present and uncorrected un-til after the trial had been completed and the cause submitted for decision on briefs, and that then they made an application in the original proceeding, not a new proceeding instituted under the community property statute, as they say was necessary, and on that application got the court to rule not that Myers should be removed, but that his appointment was void on the grounds we have given, and then doing what should have been done at least as late as August, 1941—adjudging the plaintiff to be head of the community.

"We submit that for the purposes of the rights between the plaintiff and third parties who had become involved because of her acts, that that judgment should in equity relate back to the time that it should have been granted and confirm the acts of the plaintiff done since that time by way of estoppel. This being a case of equity, it would seem that the maxim—'Equity assumes that as done which ought to have been done' will bring this case within its just and proper principle."

Defendant's argument is faulty.

■ By the 1915 amendment (Ch. 84) "the control and right of disposition of the husband alone of the real property of the community *was done away with.*" See Jenkins v. Huntsinger, supra [46 N.M. 168, 125 P.2d 333].

At least it may be said with definite assurance that by virtue of Sec. 16 of the Community Property Act as amended, the husband's power to manage and control and dispose of community property *is lim-*

ited to *personal property*. As to whether the husband has, notwithstanding the 1915 amendment, some power of *management* of the community real property superior to the power of the wife we do not consider nor decide. It is clear that the interest of the spouses in community real property is equal and that they have an equal voice in the matter of its alienation. Jenkins v. Huntsinger, supra.

So far as the alienation of community real property is concerned, it may be fairly said that since the 1915 amendment there is no "head of community."

This is not to say that the idea of the husband being the head of the community in other respects has been abolished. There may be much for this power to operate on without relating it to the alienation of real estate.

When defendant said in her argument supra that the last five sections of the Community Property Act which relate to the wife's powers in the event of the husband's disqualification have never been amended since their original enactment, she made an assertion which is too broad. To the extent that they have not been expressly amended she may be correct.

However, Ch. 84, L.1915, Sec. 65-403, N.M.S.A.1941, carried a clause repealing all acts and parts of acts in conflict with that chapter.

■ With defendant's assertion that that voiding clause in the 1915 amendment applies only while the husband is head of the community and is not applicable to the mortgage herein involved, we cannot agree. It would be more appropriate to say that the last five sections of the Community Property Act (65-405 to 65-409, N.M.S.A. 1941) have been modified as a result of the enactment of Ch. 84, L.1915, and as so modified are not applicable to the mortgage here involved.

It is to be noted that Sec. 65-405 declares that under certain conditions the wife may present a petition to the district court stating the facts which render the husband incapacitated to manage and administer the community property "and praying that she be substituted for her husband, as the head of said community, with the same power of managing, administering and disposing of the community property, *as is vested in the husband by this chapter.*"

We agree with the defendant that these useful provisions have not been done away with because of the amendments of Sec. 16 of the Act, section 65-403, N.M.S.A.1941. Rather they must be retained and be applied insofar as they may operate consistently with the amendment. There is no change in the operation so far as the management and control of the *personal property* of the community or of the disposition thereof other than testamentary is concerned. As to these matters, the substitution of the wife for the disqualified husband remains complete and effective, subject to such limitations as may be imposed by the court. The results of the power of

substitution has not been curtailed except in that the power of the husband as head of the community has been curtailed.

■ When under Sec. 65-405 the wife is permitted to pray for and receive as head of the community "the same power of managing, administering and disposing of the community property, as is vested in the husband by this chapter." she gets all the power the husband has under the chapter *as amended*.

It is true that this power of the wife as the substitute for the husband is not as broad as it was prior to the 1915 amendment, but that is because the husband's power is not as extensive as it was prior to such amendment.

The philosophy of the Act has not been changed. The wife when substituted as head of the community gets all the power the husband as head of the community possesses.

We cannot accept defendant's reasoning that in some way the wife when substituted for the husband as head of the community has powers which the husband had in 1907 and thereafter until such powers were curtailed by the 1915 legislature. The power which the husband had as head of the community under Sec. 16 of the Community Property Act as enacted in 1907 was not an uncontrolled power. The power was subject to certain limitations and controls. The legislature of 1915 by Ch. 84 repealed those controls and substituted a new and different set. We cannot give effect to the

sections of the act providing for substitution of the wife for the husband as head of the community without any controls whatever, and we cannot restore the limitations and restrictions imposed by the 1907 legislature because they were repealed by the 1915 legislature. The only reasonable construction is that the wife, when now substituted for the husband as head of the community, has such power as community head as the husband now has.

As the law now stands there is no head of the community with respect to the alienation of community real property. Formerly the conveyance of real property of the community (except homestead) could be accomplished by the deed of the husband alone as head of the community. He acted for himself, for his wife, and for the community. That system has been "done away with." Jenkins v. Huntsinger, supra.

Now, when the husband and wife execute a conveyance of community real property, they each act under their own power and each for himself. From the legal standpoint each of their voices as to conveying or not conveying is equal. Jenkins v. Huntsinger, supra. There is no head of the community with respect to such conveyances unless it can be said that they jointly are the head of the community in such matters. It is one for both and both for one in order to be effective.

In Jenkins v. Huntsinger, supra, we reasserted our holdings that the spouses have a present vested right in community property.

There may be good reasons for the distinctions between the controls which the husband in the first instance and the wife by substitution has over personal property of the community, which does not extend to real property. Personal property is of the more perishable sort. Out of it usually support is drawn for the wife and family, if there are children. Personal property such as livestock, for an instance, requires immediate management and attention for its preservation. In most instances its transfer passes by delivery without written evidence of transfer. The problems of title are not so grave and complicated.

There is some analogy between the passing of control of personal property to a substituted head of the community and the passing of control of personal property from a deceased person to an administrator or a personal representative. The situation is different with respect to real property. The rights of heirs to whom real property goes directly may present a different situation. The fact that a husband as managing head of the community may in some way favor his heirs at the expense of the heirs of the wife has given rise on occasion to connubial infelicity. Whatever the reasons for the distinction may be, with which we are not necessarily judicially concerned, it is plain that the 1915 amendment has definitely made such distinction.

Whatever power the wife has as a substituted head of the community with respect to the management and control and power of disposition of the personal property of the community, it is not readily apparent that there is a good reason for placing the control and power of disposition of the insane, or habitually drunken, or imprisoned, or deserting husband's interest, ownership and title in community real property in the wife alone.

Nor does it seem necessary for the wife whose husband is afflicted with insanity to have recourse to Sec. 65-405, N.M.S.A. 1941 in order to get relief and assistance in solving the community property problems pertaining to the real property of the community.

Trial Court Rule 85-101 et seq. which are incorporated in Art. 3 of Ch. 35, N.M.S.A. 1941, relating to guardian and ward and found at section 35-301 et seq. provide an adequate procedure for the adjudication of incompetency, for the sale, conveyance, lease or encumbrance of property both real and personal belonging to the insane or incompetent person. The procedure makes provision for adequate security to protect the interest of the insane or incompetent person.

Since the insane, drunken, imprisoned or deserting husband has not by these misfortunes or delinquencies been divested of his title or ownership of his interest in community real property, he should not be divested thereof except by the most strict compliance with the law, and then only with the best security for the preservation for his use and benefit of the proceeds of the divestiture. The procedure governing

guardianship seems to be adequate, at least insofar as an insane husband is concerned.

As we have heretofore indicated, the contentions of the defendant-appellant might be sufficiently answered by saying that even if a wife could be appointed as a substitute for her insane husband as head of the community, and that so appointed she could transfer the interest of the husband in the community real property, it appears that she was not so appointed and did not purport to perform the acts here involved as a head of the community.

In Texas where they have a statute which provides that upon the husband's becoming insane the exclusive management and control of the community property may pass to the wife, it has been held that the exclusive management and control of the community property does not automatically pass to the wife. Howell v. Fidelity Lumber Co., Tex.Com.App., 228 S.W. 181. And in Magnolia Petroleum Co. v. Still, 1942, Tex.Civ.App., 163 S.W.2d 268, 272, the court said: "We agree that the fact alone of insanity of the husband does not give the wife exclusive or unlimited authority to contract as a feme sole, or to dispose of the community property in the absence of any necessity therefor. If she wishes to exercise the absolute powers conferred upon the qualified survivor of a deceased or insane husband by the community administration laws, to sell or otherwise dispose of community property whether there be necessity for such sale or not, she must give bond and qualify under the statutes. Fidelity Union Ins. Co. v. Hutchins, 134 Tex. 268, 133 S.W.2d 105."

The record shows that Sofia Frkovich in executing the mortgage acted in her own behalf and did not purport to act for or on behalf of her husband. However, as we have said, a wife appointed as head of the community, in that capacity alone, cannot convey or transfer community real property.

There is no merit to appellant's contention that if the 1915 amendment be construed as making the wife's attempted conveyance absolutely void when she has succeeded as head of the community then the Act itself is void as in violation of Sec. 16 of Art. 4 of the Constitution because the title to that Act does not include, but instead excludes any purpose to affect the wife's interests or deprive her of all power to convey when she becomes head. It is to be noted that Sec. 16 of Ch. 37, L. 1907 dealt with the power of the husband over community property. The title of Ch. 84, L. 1915 reads: "An Act to Amend Section 16 of Chapter 37 of the Session Laws of 1907, Relating to the Power of the Husband over the Community Property."

So it appears that the Acts of 1907 and 1915 deal with the same thing; that is, the power of the husband over community property. By the 1915 enactment the husband's power over the community real property was curtailed. It did not take away any rights which the wife had, but on the other hand provided safeguards to her

interests in community real property. If anything has been taken away from the wife by the 1915 amendment such subtraction occurs only incidentally and automatically from the fact that the husband under the 1915 amendment has less power over the community property than he did before, and consequently, if under appropriate circumstances the wife is substituted for the husband as head of the community she would likewise have less power.

The only language in Secs. 65-405 and 65-408, N.M.S.A. 1941, which might seem inconsistent with the views herein expressed is that these sections refer to community property "either real or personal." The word "real" was appropriate enough when the sections were enacted in 1907 but it has become inappropriate in view of the 1915 amendment of Sec. 16 of the Act and we find no difficulty in its deletion as a necessary result of the modification of the "chapter" by the 1915 amendment.

 In accordance with the general rule of construction that a statute should be read as a whole, as to future transactions, the provisions introduced by the amendatory act should be read together with the provisions of the original section that were re-enacted in the amendatory act or left unchanged thereby, as if they had been orginally enacted as one section. Effect is to be given to each part and they are to be interpreted so that they do not conflict. It is also a general rule that a provision in an act is to be read in its context;

or as the same principle is expressed with reference to whole statutes, if an amendment is regarded as a separate act rather than part of an existing act, a statute is to be read in connection with other statutes pertaining to the same subject matter, is applicable to the interpretation of amendatory acts. The original section as amended, and the unaltered sections of the act, code or compilation of which it is a part, relating to the same subject matter, are to be read together. The act or code as amended should be construed as to future events as if it had been originally enacted in that form. Provisions in the unamended sections applicable to the original section to which it was applicable are applicable to the section as amended insofar as they are consistent. The unchanged sections and the amendment are to be interpreted so that they do not conflict. All the provisions of both are to be given effect and reconciled if possible. Sutherland Statutory Construction, Sec. 1933, 1934 and 1935, (3rd Edition, Horack.) See also United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551; Blair v. City of Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801, 832; Balanced Rock Scenic Attractions v. Town of Manitou, 10 Cir., 38 F.2d 28.

There is no conflict in our application of these rules in the case at bar and the conclusion of the majority in Janney v. Fullroe, Inc., 47 N.M. 423, 144 P.2d 145. In that case some of these rules were noticed and the legislative intent was discovered

independently of them from other considerations thought to be of greater controlling force.

There remains for consideration appellant's fifth assignment of error which is as follows: "The court erred in refusing to rule that the mortgage should be cancelled, if at all, only on condition that the debt secured thereby should be first paid."

 Appellant invokes the maxim of equity: "He who seeks equity, must do equity." This is a useful maxim and is frequently applied where one seeks the cancellation of an instrument. In pursu· ance of the principle of restitution, the mortgagor seeking cancellation must pay to the mortgagee the money borrowed or obtained by virtue of the mortgage. See 12 C.J.S. Cancellation of Instruments, § 44. However, the same text at p. 1009 states: "Where the consideration for a contract sought to be cancelled consisted entirely of a past-due indebtedness, the maxim that he who seeks equity must do equity has no application."

The text is repeated in substance in considering the application of the rule to mortgages. See page 1011 of 12 C.J.S., Cancellation of Instruments, § 44. To the cases cited in support of the text should be added Walker v. Baker, 1917, 199 Ala. 310, 74 So. 368, which reaffirmed the Jenkins case, stating that the court had been cited to no authority which questioned the soundness of that decision. We have examined the digests and find that most uniformly the rule is applied where some consideration is paid to the grantor or mortgagor when the deed or mortgage is taken.

In the case at bar the plaintiff received no money from the defendant mortgagee at the time the mortgage was taken. If any consideration existed for the execution of the mortgage it was a moral one solely, and as far as the record shows, the mortgagee's status is no worse now that it was before the mortgage was taken. The rule that complainant must, as a condition to his obtaining relief, restore defendant as far as possible to the position which he occupied before the transaction which is sought to be rescinded has no application since there was nothing to restore and the parties after cancellation remained in statu quo. Thus no equitable rights have arisen from the transaction in favor of defendant.

 Another thing is that it is indicated in Jenkins v. Huntsinger supra, that the statute making void mortgages of community real property unless executed by both the husband and wife jointly, has its origin in public policy. This puts a heavier burden on the defendant in seeking application of the maxim she invokes. She is charged with a knowledge of the law and she apparently knew that the mortgaged property was community real property, and that a mortgage of it required a joint execution by the plaintiff and the guardian of her insane husband. Whether the plaintiff in respect to the transaction was in pari delicto with the defendant in thwarting public policy so as to relieve defendant of the burden men-

tioned in this paragraph we do not stop to inquire. But neither the insane husband nor his guardian were in any manner involved in the transaction.

It appears to be the general rule that a conveyance obtained from an insane person by one having knowledge of his incapacity will be set aside without requiring a restoration of the consideration received, under the principle that anyone dealing with an insane person, knowing his insanity, deals with him at his own peril and must bear alone whatever loss arises from the transaction. See 12 C.J.S., Cancellation of Instruments, § 44, p. 1009. We think that however commendable it may have been for the plaintiff to desire to secure the payment to the defendant of a past due indebtedness, the defendant should have been advised, and it seems that she was advised, that in order to do this through the process of taking a mortgage on the community real property of the plaintiff and her insane husband it was necessary to have the written consent of the guardian of the husband through his joint execution of the mortgage.

From all of the foregoing we are brought to the conclusion that appellant's fifth assignment of error is without merit.

We do not mean to say that under some circumstances the maxim invoked by defendant might not apply so as to deny relief to an actor who seeks cancellation of a conveyance void under the provisions of Sec. 65-403, N.M.S.A.1941. We merely say that this is not such a case.

The judgment must be affirmed, and it is so ordered.

SADLER, C. J., and MABRY, BRICE, and THREET, JJ., concur.