449 P.2d 324

**ELECTRIC SUPPLY CO., Inc., a New Mexico corporation, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, and Robert Lockwood, d/b/a Lockwood Construction Company, Defendants-Appellees.**

No. 8628.

Supreme Court of New Mexico.

Jan. 13, 1969.

Robinson & Ortega, Albuquerque, for appellant.

Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, for appellee United States Fidelity & Guaranty Co.

McKenna, Sommer & Lawler, Santa Fe, for appellee Robert Lockwood.

OPINION

CARMODY, Justice.

In this action, plaintiff sought to recover damages by reason of the failure to pay for certain electrical materials. The trial court granted summary judgments in favor of both the individual defendant and the defendant surety company.

The case is an outgrowth of an extremely involved series of transactions relating to the construction of a sizable apartment unit project in Santa Fe known as La Casa Loma Apartments. While it is not necessary to detail all of the many ramifications, the following is necessary to convey a proper understanding of the present litigation.

Originally, defendant Lockwood and one Hatch entered into a contract for the construction of the apartments. A few days later, the base contract was apparently amended, purporting to make Lockwood the agent rather than a general contractor. Subcontracts were entered into, and United States Fidelity & Guaranty Company executed a performance bond for the base contract and another bond relating to the electrical subcontract. Many firms were not paid for labor or material, including the plaintiff which furnished materials to subcontractor Grimes-Morris, Inc., also known as the Grimes-Morris Elect. Contractors. This latter company went bankrupt, and plaintiff sued to recover from the alleged contractor and the surety. Prior to the filing of this case, the holder of the construction loan commenced an action to foreclose its mortgage. After the instant case was at issue, efforts were made to salvage the project and suspend the mortgage loan foreclosure. A memorandum of agreement was executed on January 2, 1967, for the purpose of forming a limited partnership between the holder of the construction loan, Hatch, defendant Lockwood, and the various suppliers of labor and materials who had not been paid. This agreement and the subsequent certificate of formation of the limited partner-

ship were executed by all parties concerned, including the plaintiff, except Grimes-Morris. Briefly, the memorandum discloses that there was a deficiency in expense of building the apartments amounting to some $445,000.00 over and above the initial loan of $1,340,000.00. The agreement then stated:

"WHEREAS, the parties hereto, for the purpose of consummating this transaction, closing the loan, and securing the insurance of the Federal Housing Administration, desire to settle any and all claims against each other; * * *."

and

"2. The creditors of Hatch shall own 40% of the general partnership and their undivided ownership is set out in Schedule B along with their contribution. Each creditor's contribution is hereby made in consideration of their release of all claims and their liens to subject property. Attachment C hereto is a lien release to be effective with the final formation of the limited partnership."

The agreement then provided that the holder of the construction loan would receive 58% ownership in the apartment complex, Hatch would receive 2%, and the creditors 40% divided among them depending on the amount owed to each one. Plaintiff, whose suit was for approximately $2,600.00, was to receive 0.76%. As stated, the agreement was duly signed by all except Grimes-Morris, presumably because it had gone bankrupt. Another unexplained error now appears, viz., that the various percentages allocated to the creditors did not total 40%, but actually only totaled 35.6%, thereby leaving unallocated the other 4.4% interest in the partnership. As to this, the plaintiff now contends that, there not having been a proper disposition of the entire 40%, a partnership never truly came into existence. This argument is, however, incidental to the basic dispute involved in the entire case, which resolves itself into the question as to whether the memorandum of agreement and the instrument of partnership clearly and unambiguously show

that the plaintiff and lienholder for materials supplied and used in the apartments secured an interest in the land and the improvements constituting the Casa Loma Apartments in exchange for whatever rights the plaintiff had against Lockwood and the surety.

The trial court, in ruling upon the motions for summary judgment, determined, in effect, that there was an accord and satisfaction, and plaintiff's claim was therefore barred. Although other questions are raised by the plaintiff, our determination of the correctness of the court's ruling as to the claimed accord and satisfaction is determinative. In this connection, the plaintiff urges, on three separate grounds, that the granting of the summary judgment was improper. The first of these is that the trial court could not even consider a defense of accord and satisfaction, because the defendants had not alleged the same in any supplemental pleading.

■ The answer to this argument can be best understood when the sequence of events in the record is related: Lockwood filed his answer on August 9, 1966, and United States Fidelity and Guaranty Company's answer was originally filed on August 4, 1966, and an amended answer on November 30, 1966. On January 2, 1967, the memorandum agreement was executed by the people concerned, including the plaintiff. What is termed "Withdrawal of Claim of Lien and Release of Lien" was executed by plaintiff on January 16th. Formal execution of the partnership contract itself took place on February 28th. The record does not disclose any further occurrences until September 13, 1967, when United States Fidelity and Guaranty Company filed its motion for summary judgment. This was followed by Lockwood's companion motion on September 18th. The summary judgment itself was entered on December 8, 1967.

Plaintiffs strongly rely on Chavez v. Kitsch, 70 N.M. 439, 374 P.2d 497 (1962), which held that the failure to plead the defense of the statute of limitations

amounted to a waiver under Rule 12(h) (§ 21–1–1(12) (h), N.M.S.A.1953), and that the trial court erred in considering the same as long as the pleadings had not been amended. However, the instant case is not at all like Kitsch, because here the only possible claim of a waiver must be based upon failure to apply to the court to file a supplemental answer. Rule 15(d) (§ 21–1–1(15) (d), N.M.S.A.1953) has to do with supplemental pleadings, and we see nothing therein that would require the parties in this case to have applied to the court to file such a pleading, or that, failing to do so, the right to rely upon happenings since the date of the answers would be waived. Rule 12(h) (§ 21–1–1(12) (h), N.M.S.A.1953) does not contemplate a waiver under these circumstances. In addition, supplemental pleadings and amended pleadings are different in that a supplemental pleading relates to facts which arose after the original pleading was filed, whereas an amended pleading includes matters that occurred before. See, 1A Barron & Holtzoff, Federal Practice and Procedure (Rules Ed., 1960), §§ 441 and 455. There is no question but that an amendment, if properly requested, could have been allowed under Rule 15(d), supra. In any event, the motions for summary judgment were fully controverted in the trial court, as well as here; there was no surprise and no prejudice, as such, has been urged by the plaintiff. Compare, Harvey v. Bokum, 70 N.M. 444, 374 P.2d 500 (1962); see, Hayes v. Philadelphia Transportation Co., 312 F.2d 522 (3d Cir. 1963). In our opinion, the trial court properly considered the defense in connection with the motion for summary judgment. Cf. Turner v. Lundquist, 377 F.2d 44 (9th Cir. 1967), in which the date of discovery of fraud, so as to make the statute of limitations applicable, was first raised by affidavit attached to the motion for summary judgment. Compare Weekes v. Atlantic National Ins. Co., 370 F.2d 264 (9th Cir. 1966).

■■ Plaintiff also urges that the memorandum of agreement and the certificate of the formation of the limited partnership was too vague and indefinite to constitute an accord and satisfaction, and that therefore the granting of summary judgment was improper. The thrust of this argument attacks the agreement as not sufficiently identifying the partners or the amount of the share each was to receive. Plaintiff properly points out that the memorandum, and the agreement itself, has a line for signature for the "Grimes-Morris Elect. Contractors," and that the same was never signed. Additionally, the memorandum specifies that the limited partners as creditors of Hatch are as shown in a schedule attached to the memorandum "with such exceptions as the parties may unanimously agree upon." There is no showing that the parties unanimously agreed that Grimes-Morris was to be excepted, nor, conversely, is there anything to make it appear that Grimes-Morris was among the creditors, other than the fact there was the line for signature. We particularly note, however, that the certificate of formation which was signed on February 28th also has a blank line for "Grimes-Morris Elect. Contractors," but on the schedule attached to the agreement, where the percentage of ownership in the Casa Loma Apartments is set out, there is no mention whatsoever of Grimes-Morris Elect. Contractors, so it would seem obvious that at that time the parties to the partnership agreement did not consider Grimes-Morris as a limited partner or entitled to any share.

We conclude that the partnership agreement sufficiently identified the limited partners and that the same properly came into existence. There was substantial compliance as required by the statute (§ 66–2–2, N.M.S.A.1953). Plaintiff is presumed to have had full knowledge of the content of the certificate of formation of the partnership and is hardly in a position to claim that he is not bound by his own contractual acts. See, Hoefer v. Hall, 75 N.M. 751, 411 P.2d 230 (1965), and cases cited therein.

■ With reference to the claim that the certificate of formation was not sufficiently definite because there was an un-

allocated percentage of the 40% setoff for the creditors, we fail to see how such an argument benefits plaintiff, because it does not affect the validity of the partnership itself. This is a matter for adjustment between the partners themselves and there is ample provision under the Uniform Partnership Act (§§ 66–2–1 et seq., N.M. S.A.1953) so that an adjustment can be made (see particularly § 66–2–29). The memorandum of agreement and the certificate of formation were sufficient to establish an accord and satisfaction.

Thirdly, the plaintiff opposes the trial court's consideration of the certificate of limited partnership, claiming that there was no accord and satisfaction because the certificate does not show upon its face that the plaintiff agreed to accept an interest in the partnership in full settlement of its claims. As to this, plaintiff argues that all it agreed to do was release its lien against the property, but that by so doing it did not release its claim against the defendants.

Under the statute (§ 61–2–15, N.M.S.A. 1953), plaintiff would have had the right to follow such a course, but the contract between the parties provides otherwise. We quote from paragraph 8 of the certificate, as follows:

"8. * * * The contribution of each of the limited partners is not cash but property in the form of *claims for money due and owing* as creditors of the La Casa Loma Apartments. * * *" (Emphasis added.)

Plaintiff signed this certificate which set forth its share, having already released its lien, and, in our opinion, considering all the facts and circumstances together with the memorandum and the certificate, we believe the partnership instruments amounted to an accord and satisfaction. The recitals of the memorandum of agreement and the provisions of the certificate itself are clear and unambiguous.

In construing the agreement, a reasonable, rather than unreasonable, interpretation was placed thereon by the trial court, and this was proper. Brown v. American Bank of Commerce, 79 N.M. 222, 441 P.2d 751 (1968). It appears to us that the whole intention of the partnership agreement would have been frustrated if we were to accept plaintiff's reasoning that it and the other creditors intended only to give up their liens, and not their claims, for the money owed. Such an argument ignores the intent of the terms of the contract, and would not give effect to the instrument as an harmonious whole which was intended to effectuate the intentions of the parties. Brown v. American Bank of Commerce, supra; and cf. Boylin v. United Western Minerals Company, 72 N.M. 242, 382 P.2d 717 (1963).

We have not overlooked plaintiff's contention that the granting of summary judgment was improper because of claimed disputed facts, nor the argument that Lockwood's motion for summary judgment should not have been considered because lacking in particularity. However, we agree with the trial court that both motions were well taken, and we would add that this case appears to us to be particularly well-suited for the use of the summary judgment procedure. Here, there is only the question of law as to whether there was an accord and satisfaction. Compare, Miller v. Montgomery, 77 N.M. 766, 427 P.2d 275 (1967). As provided by the rule, based upon the pleadings and the admissions on file, there was no genuine issue of material fact and the defendants were entitled to judgment as a matter of law (Rule 56(c)) (§ 21–1–1 (56) (c), N.M.S.A.1953). See, Archie v. Smith, 78 N.M. 548, 434 P.2d 73 (Ct.App.1967); and Stake v. Woman's Division of Christian Service, 73 N.M. 303, 387 P.2d 871 (1963). See, generally, 6 Moore's Federal Practice, §§ 56.15, 56.17(4) and 56.17(49).

Our conclusion makes unnecessary a discussion of the other points argued by the plaintiff.

The judgment is affirmed. It is so ordered.

MOISE and COMPTON, JJ., concur.