796 P.2d 236

**Donald H. ENGLISH,**
**Plaintiff–Appellant,**

v.

**Steve SANCHEZ and Lillian Sanchez,**
**Defendants–Appellees.**

**No. 18123.**

Supreme Court of New Mexico.

June 27, 1990.

Singer, Smith & Williams, Mary E. Stewart, Albuquerque, for plaintiff-appellant.

R. Russell Rager, Albuquerque, for defendants-appellees.

## OPINION

RANSOM, Justice.

Donald H. English appeals a summary judgment in favor of Steve and Lillian Sanchez whom English sued for the balance owing on a real estate contract. On February 22, 1982, the Sanchezes had contracted to buy from English about fifty acres of undeveloped land in Taos County, New Mexico. They paid $5,000 down and thereafter made monthly payments against the initial principal balance of $14,000. The contract was adjudged void because English's wife Emma did not join as required by NMSA 1978, Section 40-3-13(A). New Mexico Community Property Act of 1973, NMSA 1978, §§ 40-3-6 to 40-3-17 (Repl. Pamp.1989). Section 40-3-13(A) provides that "Any transfer, conveyance, mortgage or lease or contract to transfer, convey, mortgage or lease any interest in the community real property * * * attempted to be made by either spouse alone in violation of the provisions of this section shall be void and of no effect * * *." The district court also awarded the Sanchezes a judgment of $16,596.14 on their counterclaim for installment payments made to English over a six-year period. We reverse and remand for trial.

When the parties entered into the contract, no deeds were prepared to be held in escrow, and, in fact, the legal title to the property was in the name of Dixon Enterprises, Inc., a New Mexico corporation. Three days later, Dixon Enterprises executed a warranty deed giving title to San Juan Enterprises, Inc., another New Mexico corporation owned by Donald and Emma English. This deed was not recorded until August 1985. Later, in 1986, San Juan Enterprises insured its interest in the property by taking out a title insurance policy.

In February 1988, six years after entering into the sales contract, the Sanchezes defaulted on their payments. On March 2, English, for himself individually, and as president of San Juan Enterprises, unilaterally executed an addendum agreement to the real estate contract changing the name of the seller from Donald H. English to San Juan Enterprises, Inc. On March 10, in apparent contradiction of the previous week's action, San Juan Enterprises transferred title in the land to English by a warranty deed recorded on March 18. The next day, English, as "Owner on [the] Real Estate Contract dated February 22, 1982," sent a letter, through his attorney, demanding payment from the Sanchezes of all sums in arrears. English later brought this suit in his name only, to collect the entire unpaid principal balance, plus accrued interest, a total of $12,330.09. No issue has been raised on appeal regarding the March 2 addendum.

In their answer, the Sanchezes raised as a defense the failure of Emma to join with her husband in the contract for sale. They also filed their counterclaim to rescind the contract (to declare it void) and recover all payments to date, $16,596.14. In opposition to summary judgment, English claimed the real estate was his separate property, never had been community property, and that the doctrine of after-acquired title applied to vest legal title in himself sufficient for all purposes in connection with the real estate contract. In support of his claim he attached a written agreement between himself and Emma designating the fifty acres as his separate property, together with affidavits from both husband and wife stating that Emma had no interest in the real estate. These documents were executed on September 9, 1988, three months after suit was filed.

The district court concluded that English had "failed to show in any way that the property to be acquired and sold under the subject Real Estate Contract would be anything but community property." The court found the contract to be void, granted the Sanchezes' summary judgment motion, and ordered repayment of the $16,596.14 plus costs.

On appeal, English raises the following issues: (1) whether there is a genuine issue of fact that the real estate was not community property; (2) whether the application of certain equitable principles or other ex-

ceptions are available to avoid the application of Section 40–3–13(A); and (3) whether the doctrine of after-acquired title prevents the contract from being void.

■ The chain of title to this property and its relation to the time the real estate contract was executed are important factors in the resolution of the questions raised in this appeal. As mentioned, English did not have title to the property at the time he executed the contract of sale. However, a person may enter into a valid contract to sell real estate to which he has no title, provided he is able to carry through with the transaction after the final payment is made or tendered. *Clark v. Ingle,* 58 N.M. 136, 266 P.2d 672 (1954).

■ Until March 10, 1988, title to the property was in the names of Dixon Enterprises and San Juan Enterprises. The latter corporation was wholly owned by Donald and Emma English. Still, San Juan Enterprises, acting through its officers, could execute valid real estate contracts or deeds to corporate real estate without the restrictions placed upon the sale of community real property. *See Phillips v. Wagner,* 470 So.2d 262 (La.Ct.App.) (where marital community owns shares of stock in a closely held corporation, the corporation and not the community owns the corporate real estate assets), *cert. denied,* 474 So.2d 948 (1985); *Boothe Fin. Corp. v. Loretto Block, Inc.,* 97 N.M. 496, 641 P.2d 527 (Ct.App.1982) (a corporation and its shareholders are separate entities even when one shareholder owns all of the stock); *see also Dotson v. Grice,* 98 N.M. 207, 647 P.2d 409 (1982) (community real property contributed to a partnership is treated as an asset of the partnership and is not subject to statutory joinder requirement for its conveyance).

English, for reasons not clear in the record, nonetheless chose to enter into the original contract of sale as an individual;

and he claims in this suit to be individually entitled to the seller's rights under the contract. Consequently, we begin our analysis of the issues by first deciding whether, at the moment when San Juan Enterprises transferred title to English, (1) the property necessarily became a community asset and, if so, (2) whether an otherwise valid existing contract for its sale in which both spouses had not joined was then void for all purposes under Section 40–3–13(A).

■ Under existing case law, we are of the opinion that the asset should be held to have become community real property when the title passed to Donald English on March 18, 1988. It is well settled that property takes its distinctive legal title, either as community property or as separate property, at the time it is acquired, and is fixed by the manner of its acquisition. *Bustos v. Bustos,* 100 N.M. 556, 673 P.2d 1289 (1983); *Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982).

■ Under our statutes, community property is defined by exclusion. All property acquired by either spouse during marriage that is not the separate property of one spouse, as defined in Section 40–3–8(A) & (B), is community property. *See* NMSA 1978, § 40–3–8. Separate property may be proved, and the presumption of community property under Section 40–3–12(A) overcome, only through showing, by a preponderance of the evidence, that the property was acquired under one of the subsections of Section 40–3–8.[1] *C & L Lumber & Supply, Inc. v. Texas Am. Bank,* 110 N.M. 291, 795 P.2d 502 (1990); *Arch, Ltd. v. Yu,* 108 N.M. 67, 766 P.2d 911 (1988).

English presented no evidence that he acquired the property with his separate funds, or through gift, bequest, devise or descent. At the time he took title to the property, there was no written agreement between the spouses designating it under

---

1. The statute provides, in part, that separate property consists of property brought to the marriage by either spouse or acquired during marriage by gift, bequest, devise or descent, together with its rents, issues and profits. Section 40–3–8. Additionally, spouses may designate separate property by written agreement. *Id.* As long as identity can be traced, separate property retains its legal characteristics. *See Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982).

Section 40–3–8(A)(5) as his separate estate. Since property takes its status as either separate or community at the very time it is acquired, we must conclude it was acquired as an asset of the marital community when title passed to English.

 Having said this, however, we still must decide if an otherwise valid and fully enforceable real estate sales contract, executed by a single spouse, is rendered wholly void under Section 40–3–13(A) because the asset later was acquired by the community. We think not. We agree that the contract was void as to after-acquired community property, but hold it was valid as to the after-acquired real estate when it was transmuted and owned by the seller as his separate estate. We believe this result comports with both the letter and the spirit of the joinder statute, and in reaching this decision we overrule no previous cases. Rather, the result we reach today reflects a decision to confine the "wholly void" interpretation and application of Section 40–3–13(A) to existing factual precedents.

A requirement that both spouses join in the execution of certain transactions has been a familiar part of our community property system since it was enacted in 1907. *See* 1907 N.M.Laws, ch. 37. The requirement initially encompassed only the homestead but later was expanded to deeds and mortgages affecting all community real estate. *See* 1915 N.M.Laws, ch. 84, § 1. The requirement was rigidly enforced and was predicated upon the possible need to protect the wife's interest in community property from her husband's otherwise almost exclusive control. *See Treadwell v. Henderson*, 58 N.M. 230, 241, 269 P.2d 1108, 1116 (1954) (Sadler, J., dissenting).

In *Jenkins v. Huntsinger*, 46 N.M. 168, 125 P.2d 327 (1942), this Court decided that the words "void and of no effect," as used in the joinder statute in effect at that time, would be construed as rendering any attempted conveyance in violation of the statute as a nullity, as against the construction that the statute should be construed as meaning "voidable" only. *Jenkins*, 46 N.M. at 171–72, 125 P.2d at 329. The *Jenkins* court rejected the applicability of the doctrines of reformation, after-acquired title and estoppel stating "any effort to breathe life into an instrument for which there was never any authority for its making [and which] the statute condemns in advance as a nullity * * * ought to be, as it is, wholly unavailing." *Id.* at 178, 125 P.2d at 333.

Essentially, the *Jenkins* court treated such an instrument as being tainted with illegality, contrary to a general public policy and therefore void for all intents from its inception. This rather extreme view of the meaning of the joinder statute was reaffirmed shortly thereafter in *McGrail v. Fields*, 53 N.M. 158, 203 P.2d 1000 (1949) (stating that even if the Court were doubtful of its earlier decision they would not disturb it as it had become a "rule of property").

 The joinder statute remained essentially unchanged until after passage of the New Mexico Equal Rights Amendment in 1972. This amendment to Article II, Section 18 of the state constitution mandated equality of rights under the law irrespective of sex and necessitated immediate change in the law in order to provide both spouses with equal powers of management and control over community property. *See* Bingaman, *The Effects of an Equal Rights Amendment on the New Mexico System of Community Property: Problems of Characterization, Management and Control*, 3 N.M.L.Rev. 11 (1973). Towards this end, the Community Property Act of 1973 retained the joinder requirement for the execution of deeds and mortgages and broadened its scope to include leases and contracts to convey community real property. Thus, the present joinder statute can be said to reflect both the earlier desire to protect the financial interests of the non-joining spouse as well as a desire to force societal change and coerce married couples to consult on certain major transactions affecting the community.

The new joinder statute carried forward the "void and no effect" language of its predecessor. *See* 1973 N.M.Laws, ch. 320, § 8. According to Professor Bingaman the statute was drafted to preserve the hold-

ings of the earlier decisions in *Jenkins* and *McGrail.* Bingaman at 31. However, while the New Mexico Legislature might be viewed as continuing to embrace and even expand the application of a nullity doctrine, it is worth pointing out that every other community property jurisdiction has moved in just the opposite direction. No other community property state continues to use the term "void" in its statutes nor takes the view that a spouse is incapable of ratifying an invalid transfer of real property. *See* Ariz.Rev.Stat.Ann. § 25–214 (1976) (added 1973); Cal.Civ.Code § 5127 (West 1983 & Supp.1990) (amended 1987); Idaho Code § 32–912 (1983) (amended 1974); La. Civ.Code Ann. art. 2347 (West 1985); Nev. Rev.Stat. § 123.230 (1987); Tex.Fam.Code Ann. § 5.22 (Vernon 1975) (amended 1974); Wash.Rev.Code § 26.16.030 (1989) (amended 1981).

Our decisions since the passage of the Community Property Act of 1973 have continued to follow our earlier precedents and have found all contracts to convey community real property not joined by both spouses "void and of no effect," absent a validly executed and recorded power of attorney. *See Hannah v. Tennant,* 92 N.M. 444, 589 P.2d 1035 (1979); *see also Arch, Ltd. v. Yu,* 108 N.M. 67, 766 P.2d 911 (1988); *Sims v. Craig,* 96 N.M. 33, 627 P.2d 875 (1981). And, since the addition to the joinder statute in 1973 of "contracts" to convey, we seemingly have overruled, *sub silentio,* our previous decisions that allowed a breach of contract action, by either the vendor or the vendee, when a real estate purchase agreement lacked execution by the seller's spouse, a requirement under our previous decisions for granting specific performance to the vendee. *Compare Viramontes v. Fox,* 65 N.M. 275, 335 P.2d 1071 (1959) *and Conley v. Davidson,* 35 N.M. 173, 291 P. 489 (1930) *with Sims and Hannah.* We even have allowed the joinder statute to be raised as an affirmative defense by the vendees to such a contract, against the spouses, and have rejected the claim that a defective conveyance might be cured by the ratification by the nonjoining spouse. *See Hannah,* 92 N.M. at 445, 589 P.2d at 1036.

Under these circumstances, we believe that the proper initiative for a departure from these precedents lies with the legislature rather than this Court. This Court has recognized that decisions involving a rule of property affecting title to real estate should be overruled only for the most compelling reasons.[2] *E.g., Duncan v. Brown,* 18 N.M. 579, 139 P. 140 (1914); *see also State ex rel. Bliss v. Dority,* 55 N.M. 12, 225 P.2d 1007 (1950); *In re Lewis' Will,* 41 N.M. 522, 71 P.2d 1032 (1937). However, we feel no compulsion to expand the application of a nullity or wholly-void doctrine beyond its present limits, in this case to a contract for sale of land that was fully enforceable and valid at the time of its execution. At that time the contract did not attempt to convey an interest in community real property. The validity of the contract was only thrown into question by the claim that when English acquired title to the property, six years later, the asset assumed the legal status of community property.

Since 1973, the legislature has provided that spouses are free to designate separate

2. Contrary to the suggestion in Justice Montgomery's special concurrence, *Hannah* and *C & L Lumber* are not anomalies. There are other cases in which this Court has allowed the joinder issue to be raised by parties that might be characterized as "strangers to the marital relationship." For example, the *Jenkins* Court rejected a construction of the joinder statute to mean that noncompliance rendered the instrument "voidable," i.e., voidable at the election of one of the spouses. Implicit in the court's decision was recognition that strangers to the marital relationship might raise the issue. This is exactly what happened in *Jenkins.* The suit was between two parties, Jenkins and Huntsinger, each of whom had received a deed to certain real estate from a Mr. Roberts. Jenkins had received his deed when Roberts was a married man. Huntsinger had received his deed six years later when Roberts, now divorced, owned the property in fee simple. Both parties were grantees of Roberts and neither can be said to have represented the interests of the previous martial community. Huntsinger raised the joinder issue and the deed received by Jenkins was declared wholly void. *Cf. Mounsey v. Stahl,* 62 N.M. 135, 306 P.2d 258 (1956) (joinder issue raised by party who purchased mineral deed from man many years after the same man, then married, had conveyed the mineral interest to another individual; earlier conveyance held void).

property by written agreement. Section 40-3-8(A)(5). The issue of the contract's validity might have been avoided had Emma English designated the property as her husband's separate estate by means of a written agreement executed contemporaneously with the San Juan Enterprises deed. Here, however, the written agreement designating the fifty acres as separate property was executed well after the acquisition of title from San Juan Enterprises, and subsequent to the motion for summary judgment by the Sanchezes. As stated above, conclusiveness of the community property presumption is fixed by traditional case law at the time of acquisition. In the absence of any material question of fact as to its validity, the agreement nonetheless is determinative of the question of transmutation.

We need not decide whether such a post hoc agreement, standing alone, avoids the prohibition of the joinder statute. Our prior decisions would indicate it should not do so. We hold simply that a sales contract, valid at the time of execution, is valid as to after-acquired separate property, once transmuted by written agreement between the spouses. The fact that the property was held for an interim as an asset of the community may have rendered the contract void for purposes of selling community property, but the interim holding of the property by the community need not void the contract for the purpose of selling separate property that is acquired through transmutation.

■ The transmutation alleged by English in response to the motion for summary judgment occurred prior to the adjudication of that motion. The affidavits and written agreement, therefore, raised a material issue of fact as to whether English had

cured any deficiency in the original complaint and was entitled to a trial on the merits of a valid claim for relief. When a pleading is defective in its statement of a claim for relief a court may allow the filing of supplemental pleadings, alleging material facts occurring *after* the original was filed, in order to correct the original insufficiency. *See* SCRA 1986, 1–015(E); *Amar v. Garnier Enterprises, Inc.*, 41 F.R.D. 211 (1966). Similarly, a party may present these facts to the court in the form of affidavits in support of, or in response to, a motion for summary judgment. *See, e.g., Electric Supply Co. v. United States Fidelity & Guar. Co.*, 79 N.M. 722, 449 P.2d 324 (1969).

The order of summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.

MONTGOMERY, J., specially concurs.

WILSON, J., concurs in special concurrence.

MONTGOMERY, Justice (specially concurring).

I concur wholeheartedly with what I take to be one of the Court's holdings in the majority opinion—that the agreement of September 9, 1988 was effective to transmute the parties' previously held community property into Mr. English's separate property, with reference to which the real estate contract at issue in this case either remained or became valid. I therefore join in most of the majority's discussion of this issue,[1] except that I disagree with the

---

1. I am willing to assume that the property was community property at the time of the conveyance to Mr. English, although I am dubious about applying the presumption in NMSA 1978, Section 40-3-12(A) (Repl.Pamp.1989) (property which is not shown to be separate property is presumed to be community property) for the benefit of a stranger to the community. A strong argument can probably be made that it is only the spouses (or their successors in interest) who are entitled to invoke this presumption and that parties asserting a claim *against* the com-

munity must avail themselves of, or be subject to, any presumptions provided by other rules of law. For example, since the Sanchezes' defense that the real estate contract is void is an affirmative defense, *Otero v. Buslee*, 695 F.2d 1244, 1248 (10th Cir.1982), they have the burden of showing by a preponderance of the evidence that the facts are as they claim them to be. Nevertheless, as I say, I will regard the property as community property for purposes of this concurring opinion.

statements that the real estate contract was void as to the property, even if properly characterized as community property, at the time it was acquired by Mr. English. In my view, the question whether a contract is void or not must be determined with reference to the identity of the party asserting its invalidity and in light of the purpose of the statute or other legal pronouncement declaring it to be void.[2] A party who is a stranger to the marital relationship lacks standing to assert the invalidity of the contract, because the purpose of the statute declaring it "void and of no effect" is to protect the assets for the benefit of the community, not to provide a weapon for invalidation of an otherwise perfectly lawful transaction.

The majority are at pains to point out that the decision today overrules no prior cases. This is understandable in view of the considerable body of case law, much of which is cited in the majority opinion, holding that a conveyance or contract to convey community property, not signed by one of the spouses, is absolutely void—void for all purposes. However, as the majority opinion intimates, existing New Mexico case law has placed this state out of the mainstream of other community property states by following the "void and of no effect" doctrine to such an extent that the purpose of the statute (NMSA 1978, Section 40–3–13(A) (Repl.Pamp.1989)) giving rise to the doctrine has been forgotten, and an overly mechanistic, unrealistic and rigid application of the doctrine has been followed instead. Although all of the community property states require both spouses to join in deeds or other instruments conveying or agreeing to convey community real property, in none of them are the consequences of non-joinder by one of the spouses so rigorously and inflexibly tied to the notion that the agreement is a "nullity" as in New Mexico. No community property state continues to use the term "void" in its statutes

governing this kind of transaction nor takes the view that a spouse is incapable of ratifying a real property transfer, as the statutes cited in the majority opinion demonstrate.

The lesson to be learned from the other community property states is reflected in cases from Idaho and Arizona. Even before Idaho replaced its "void" statute with a modern "equal control" statute, case law had ameliorated the harshness of this adjective, if literally applied, in certain situations. In *Tew v. Manwaring*, 94 Idaho 50, 480 P.2d 896 (1971) (decided under former law), the Supreme Court of Idaho held that an agreement to purchase a home could not be invalidated at the behest of the buyer, saying:

> While it is true that a contract to convey the community real estate is void if not signed and acknowledged by both the husband and wife under this statute, this is not an inexorable rule and does not defeat the contract between the [sellers] and [the buyer]. First, this statute was enacted for the purpose of protecting the community and cannot be invoked to gain advantage over the community especially where the plaintiffs [sellers] have fully performed.

> \* \* \* \* \* \*

> Further, [buyer's] actions, especially subsequent to the formation of the contract, are clearly such that he should be estopped to deny that a contract existed or assert that it is invalid for want of acknowledgement by the wife.

*Id.* at 53, 480 P.2d at 899. *See also Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 728 P.2d 1227 (1986) (declining to follow *Sims v. Craig*, 96 N.M. 33, 627 P.2d 875 (1981)).

The holding in *Geronimo* assessing liability against the signing spouse essentially parallels that in *Conley v. Davidson*, 35

---

**2.** *Cf. Romero v. Garcia*, 89 N.M. 1, 546 P.2d 66 (1976) (husband's deed of community property, though void for lack of wife's joinder, sufficient for purpose of color of title); NMSA 1978, § 44–5–4 (judgments, conveyances and contracts founded on gambling loss void, but holder in due course takes free of defect); NMSA

1978, § 55–2–201, comment 4 ("Failure to satisfy the requirements of [this section of the Uniform Commercial Code covering formation of sales contract] does not render the contract void for all purposes, but merely prevents it from being judicially enforced in favor of a party to the contract.").

N.M. 173, 291 P. 489 (1930), in which this Court allowed an action for damages to be maintained by the buyer against the seller under a real estate purchase agreement where the seller's wife refused to join in the conveyance. The Court in *Adams v. Blumenshine*, 27 N.M. 643, 204 P. 66 (1922), had held that even though the "void and of no effect" law then in effect (1915 N.M.Laws, ch. 84, § 1) covered only conveyances and not contracts to convey, since the conveyance would be void without the wife's joinder the contract "would likewise be void and of no effect, at least so far as specific performance of the contract is concerned." *Id.* at 651, 204 P. at 68. Despite this holding, the Court in *Conley* permitted an action against the seller-husband for damages.

A review of other New Mexico cases on this point is similarly instructive. The decision in *Conley* was followed in *Potter v. Connor*, 38 N.M. 431, 34 P.2d 1086 (1934) (absence of joinder by seller's wife does not invalidate contract for sale of community realty when invalidity asserted by buyer); in *Treadwell v. Henderson*, 58 N.M. 230, 269 P.2d 1108 (1954) (wife estopped after divorce from asserting non-joinder defense, having promised buyer deed to community realty); in *Viramontes v. Fox*, 65 N.M. 275, 335 P.2d 1071 (1959) (failure on part of seller's wife to join in contract to convey community realty not available to buyer as defense in seller's damages suit for breach of contract); and in *Pickett v. Miller*, 76 N.M. 105, 412 P.2d 400 (1966) (in action by sellers where wife willing to convey community realty, lack of signature not a defense available to buyers who breached contract). Thus, well before enactment of the Community Property Act of 1973 a significant body of New Mexico case law affirmed the enforceability of contracts to convey community real estate in various circumstances, and several of those cases (*Potter, Viramontes,* and *Pickett*) re-

buffed attempts by the contract vendees to have the contracts declared void.

According to Professor Bingaman, however, the express inclusion in Section 40–3–13 of all "contracts to transfer, convey or mortgage" any interest in community real property has the effect of reversing the holding in *Viramontes v. Fox.* Bingaman, *The Community Property Act of 1973: A Commentary and Quasi–Legislative History,* 5 N.M.L.Rev. 1, 32–33 (1974). If indeed the statute has that effect, then it would seem that the other cases cited above, beginning with *Conley v. Davidson,* would also fall, although as recently as 1985 this Court cited *Treadwell v. Henderson* with approval. *Otero v. Wheeler,* 102 N.M. 770, 774, 701 P.2d 369, 373 (1985).[3] In this posture, New Mexico has repudiated even the modest inroads into the "void and of no effect" doctrine gained under prior case law and now stands alone among the community property states as the only example of militant enforcement of this concept.

The concept is pernicious—not necessarily wrong in all its applications—in my opinion because it produces legal consequences from people's acts without regard for the underlying purpose or purposes of the legal rules which are applied to those acts. In the instance of the "void and of no effect" rule of Section 40–3–13, a contract to convey community real estate which lacks the signature of one of the spouses is treated as an absolute nullity—as though the piece of paper were never signed. This, of course, is contrary to reality; the parties *did* sign the piece of paper, and for the law to refuse to recognize that historical fact and accord it any significance whatsoever, no matter what the circumstances, is for the law to blind itself to a moment of historical reality. If there is a reason to do this—a reason for the law to ignore the parties' actions—then that consequence may very well be justified; but if

---

**3.** *Otero* is a case of recent vintage recognizing—*Jenkins v. Huntsinger* and *McGrail v. Fields* to the contrary notwithstanding—that a wife could ratify, or be estopped from disavowing, a contract not signed by her to convey community realty. To be fair, it is possible to read the case as holding that the wife only ratified, or was estopped from denying, her husband's execution of the contract on her behalf under a power of appointment, but the case comes very close to doing what *Jenkins* and *McGrail* say cannot be done.

no reason exists and no purpose is served by treating the parties' deliberate actions as though they never occurred, then the law achieves results which, in laymen's eyes at least, make it appear to be the ass that Dickens' character said it was.

The purpose behind Section 40–3–13 has recently been re-articulated by this Court: "to safeguard the interest of a spouse in community real property." *Arch Ltd. v. Yu*, 108 N.M. 67, 72, 766 P.2d 911, 916 (1988). *See also Treadwell v. Henderson*, 58 N.M. at 243, 269 P.2d at 1116 (Sadler, J., dissenting): "[T]he protection afforded by this statute is primarily for the benefit of the wife [sic] against efforts by the husband [sic] to appropriate her [sic] just and lawful share of community real estate." And, until very recently (see below), in *every* case in which the statute has been applied to invalidate a contract or conveyance (except one: *Hannah v. Tennant*, 92 N.M. 444, 589 P.2d 1035 (1979) [4]) the invalidation has been declared at the behest of the seller(s) under the contract or the grantor(s) under the deed or their successors in interest. In *no* case, according to my research, has the grantee or the vendee, or a successor of one of them, successfully invoked the statute to invalidate a conveyance or a contract (again, except in *Hannah* ). *See Arch, Ltd. v. Yu; Marquez v. Marquez*, 85 N.M. 470, 513 P.2d 713 (1973); *Mounsey v. Stahl*, 62 N.M. 135, 306 P.2d 258 (1957); *McGrail v. Fields*, 53 N.M. 158, 203 P.2d 1000 (1949); *Frkovich v. Petranovich*, 48 N.M. 382, 151 P.2d 337 (1944); *Jenkins v. Huntsinger*, 46 N.M. 168, 125 P.2d 327 (1942); *Terry v. Humphreys*, 27 N.M. 564, 203 P. 539 (1922); *Adams v. Blumenshine*. And so it does not amount to much of a break with existing case law—particularly in light of the *Conley* line of cases—to hold (as I believe we do in this case) that, at ·least where the sellers have "ratified" the contract by executing a designation agreement under Section 40–3–8(A)(5), the statute may

not be invoked by the vendees under a real estate contract to avoid their otherwise just and legitimate obligations under that contract.

The "very recent" instance, noted in the preceding paragraph, of an application of the "void and of no effect" doctrine at the behest of someone other than a spouse or a successor is, of course, this Court's decision on June 13, 1990 in *C & L Lumber & Supply, Inc. v. Texas American Bank*, cited in the majority opinion. In that case, in which I did not participate, the panel held that a mortgage could be successfully attacked as void by lien claimants (under mechanic's and materialman's lien claims) to upset the priority of an otherwise valid and prior first-mortgage lien on real property. The mortgage in question in that case was given by a husband without his wife's joinder; in a foreclosure action by the bank mortgagee against various lien claimants long after the wife had deeded any interest in the property to the husband, the lienors successfully invalidated the bank's mortgage.

Thus, the "void and of no effect" doctrine has received its fullest and most inexorable application in a very recent decision of this Court, allowing complete strangers to the marital relationship—not even parties having some contractual or other legal relationship with the community—to raise issues of characterization of the spouses' property and to strike down as "void" a juridical act of one of them. In this state, then, a contract, conveyance or mortgage of community property without one spouse's joinder is void, void, void—no matter who raises the issue and no matter what the consequence on other parties' rights. This is a situation that cries out for legislative correction, in the same or a similar way that this unjust, inflexible approach has been corrected in the other community property states. Fortunately in the

---

**4.** It is very possible that *Hannah* was wrongly decided, although the only issue really dealt with in the opinion was whether the word "join" in the statute means actually "sign" or only that the non-signing spouse be ready, willing and able to participate in the transaction. 92 N.M. at 445, 589 P.2d at 1036. There was no issue in *Hannah* about the effect of an interspousal agreement designating the property as separate or community, because there was no such agreement. *Hannah* should be either overruled or limited to its facts.

present case, the intervention of another statute—that recognizing a husband and wife's ability to deal with their property as they see fit and to change its characterization in order to prevent an unjust result—has rescued the plaintiffs below and this Court from another unsound application of the "void and of no effect" doctrine and statute. For that reason, I happily concur.

WILSON, J., concurs.