766 P.2d 911

**ARCH, LTD. and H. Sam Archuleta, Plaintiffs–Appellees,**

v.

**Daniel T. YU, Defendant–Appellant.**

**No. 17417.**

Supreme Court of New Mexico.

Dec. 21, 1988.

Rehearing Denied Jan. 23, 1989.

Coors & Ginsburg, Henry G. Coors, Albuquerque, for defendant-appellant.

Rhodes & Salmon, P.C., Mark M. Rhodes, Albuquerque, for plaintiffs-appellees.

## OPINION

RANSOM, Justice.

Plaintiff Arch, Ltd. (Arch) and its general partner, H. Sam Archuleta, brought suit against defendant Daniel T. Yu for damages arising from the breach of a real estate exchange agreement. Following a bench trial, the district court awarded judgment in favor of Arch in the principal amount of $114,851.40 for actual and consequential damages. We reverse.

On January 15, 1985, by written contract, Yu agreed to the exchange of two office

buildings owned by Archuleta[1] for the price of $800,000 to be paid to Arch by delivering $700,000 in cash at closing and transfering title to a house and two lots that had a combined equity value of $100,000. Also included was a leaseback provision in which Archuleta and Company, P.C., a nonparty to this suit, "agree[d] to leaseback after closing" space in one of the office buildings. On February 25, the parties executed an addendum to the agreement that provided for equal sharing of all expenses attributable to new leases entered into between February 14 and April 15, the closing date, so long as the parties jointly agreed upon the terms of each prospective lease. The closing date was subsequently extended by mutual agreement after the closing agent discovered that the mortgage on Yu's house was not assumable as previously represented. Archuleta subsequently obtained financing to cover the remainder due on the house mortgage and notified Yu that he was ready to close.

The trial court found that on April 22, 1985, Arch, through its agent Archuleta, performed on its obligation under the agreement, executed all documents, and transferred title in the office buildings to Yu. The court further found that, after Yu refused to perform under the agreement, Arch made a written demand for Yu to close on May 2. The court concluded that Yu failed to perform his obligations under the agreement. The actual damages awarded Arch represented the difference between the contract price ($800,000) and the market value of the office buildings at the time the closing was to have occurred ($700,000). Further, a portion of the consequential damages was to compensate Archuleta and Company, P.C., for additional lease expenses ($10,800) it incurred as a result of Yu's failure to close the transaction. Costs and post-judgment interest were also awarded.

On appeal, Yu raises the following issues: (1) whether substantial evidence supports a finding that the house and two lots were owned by Yu as separate property; (2) if the Court determines the house and two lots to be community property, whether the exchange agreement is void in its entirety under NMSA 1978, Section 40–3–13 (Repl.Pamp.1986), negating an action on the contract for damages, or is divisible leaving that portion supported by valid consideration enforceable; (3) whether the addendum to the exchange agreement is enforceable; (4) whether there was substantial evidence to support the finding that Yu's failure to close the transaction denied Archuleta and Company, P.C., an opportunity to lease office space in one of the subject buildings and (5) regardless, whether the court erred in awarding consequential damages in favor of Archuleta and Company, P.C., because it was not a party to the suit.

At trial, Yu raised the affirmative defense under Section 40–3–13 which requires that both spouses join in a contract to convey community real property. *See Hannah v. Tennant*, 92 N.M. 444, 589 P.2d 1035 (1979). In *Hannah*, this Court held that "a contract for the sale of an interest in community real property, which has not been *signed* by *both* husband and wife, is unenforceable, void and of no effect, absent a validly executed and recorded power of attorney." *Id.* at 446, 589 P.2d at 1037 (emphasis in original). It is undisputed that Yu's wife, Bernice, did not sign either the exchange agreement or the addendum. On appeal, Yu maintains that there is no substantial evidence to support a finding that the property in question was his separate property.

■ Initially, we note that Yu neither raised this affirmative defense in his pleadings nor moved to conform his pleadings to the evidence under SCRA 1986, 1–015(B). Citing *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 597 P.2d 290, *cert. denied*, 444 U.S. 911, 100 S.Ct. 222, 62

---

1. The district court found that the office buildings were held in the name of H. Sam Archuleta and that they had not been transferred to the partnership despite provision for transfer in Arch, Ltd.'s Articles of Agreement. The court further found that Mrs. Archuleta acquiesced in the arrangement by executing a quitclaim deed and a relinquishment of her community interest.

L.Ed.2d 145 (1979), Arch maintains that Yu's failure to plead this affirmative defense constitutes its waiver. However, the issue was raised by Yu at trial, litigated without objection by Arch, and ruled upon by the court. Consequently, any issue of waiver is not before us on appeal. *See Terrill v. Western Am. Life Ins. Co.*, 85 N.M. 456, 513 P.2d 390 (1973).

■ Under *Hannah*, Yu had the burden of proving the property at issue was community property. *See Otero v. Buslee*, 695 F.2d 1244 (10th Cir.1982). Yu introduced into evidence a warranty deed for the house and a warranty deed for the two lots that conveyed title to Mr. and Mrs. Yu. Under Section 40–3–12, property acquired during marriage by either husband or wife, or both, is presumed to be community property. *Marquez v. Marquez*, 85 N.M. 470, 513 P.2d 713 (1973). Because this evidence established the affirmative defense prima facie, Yu shifted the burden to Arch to rebut the presumption that the house and two lots were held as community property. *See Otero*, 695 F.2d at 1249 n. 4.

Arch asserts, however, that under *Otero* Yu did not establish that the property in question is community property by simply introducing warranty deeds conveying title to Yu and his wife years prior to the execution of the real estate exchange agreement. Arch maintains that Yu had the burden to demonstrate that no power of attorney had been recorded or to produce a title search establishing that, at the time of closing, record title to the real estate was held as community property.

Arch's reliance on *Otero* is misplaced. In *Otero*, the purchasers, the Buslees, breached a contract to purchase real estate from Otero. In defense, the Buslees claimed that the contract was void under Section 40–3–13 because Otero did not have a valid power of attorney from his wife to convey the jointly-owned property. The court ruled that to make a prima facie showing of this affirmative defense, lack of power of attorney, the Buslees had to offer some evidence that there was no properly recorded power of attorney; but they offered no evidence suggesting that there

was none. Here, Yu's introduction of the warranty deeds was sufficient to establish prima facie that the real estate was held as community property.

■ Therefore, the issue to be resolved on appeal is whether substantial evidence exists to support a finding that Arch overcame the community property presumption. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). The litigant asserting the separate character of property has the burden of establishing separate ownership by a preponderance of the evidence. *Nichols v. Nichols*, 98 N.M. 322, 327, 648 P.2d 780, 785 (1982).

■ We do not believe there is substantial evidence to support Arch's burden. Arch first points to Yu's admission in his answer to both the original complaint and the amended complaint that he owned the property in question, which he did. Yu's failure to qualify in his pleadings that his spouse held a community interest in the property is now immaterial. At trial, Yu raised his affirmative defense which was litigated without objection. Consequently, the pleadings are deemed amended under SCRA 1986, 1–015(B). *See Aguayo v. Village of Chama*, 79 N.M. 729, 449 P.2d 331 (1969).

Other evidence presented by Arch was testimony that during the contract negotiations Yu represented to Archuleta that the property was owned solely by Yu and that Yu's wife had no community interest in it. Also, Yu testified that he provided only one signature line for himself in drafting the agreement. This evidence is not sufficient to rebut the presumption that the house and two lots were community property. Yu's extrajudicial admission that the real estate is separate property was a legal conclusion. Arch could not rely simply upon this extrajudicial admission as competent evidence. Arch failed to produce factual evidence that would support Yu's characterization of the property as separate. *See, e.g.*, NMSA 1978, § 40–3–8 (Repl. Pamp.1986) (definition of separate proper-

ty). Furthermore, the purpose of Section 40–3–13 is to protect a spouse from having an interest in community property conveyed without that spouse's consent. That purpose would be defeated if the words and conduct of the disingenuous spouse were sufficient to rebut a presumption that property was held as a community interest.

■ The only remaining evidence to counter the affirmative defense is that Mrs. Yu signed the loan commitment issued by the bank for $600,000, which arguably evinced her willingness to participate in the exchange transaction. Section 40–3–13 requires that both spouses sign the *contract* conveying the community real property. Without more, the signature of a spouse on a loan agreement is insufficient to overcome the affirmative defense. *Cf. Otero v. Wheeler*, 102 N.M. 770, 701 P.2d 369 (1985) (where husband and wife were real estate brokers, wife ratified husband's sale of community realty, without any indication that husband signed as wife's agent, by participating in transactions involving other real estate in which husband had acted for both himself and wife, by joining and signing loan agreements for realty in question, by the appearance of her name on documents by which other land was transferred, and by deposit of checks in account from which husband's and wife's bills were paid).

■ Having concluded that the conveyance of the house and two lots was invalid under Section 40–3–13, we next address whether the exchange agreement remained enforceable after part of the consideration was void. If the void portion of a contract can be eliminated without destroying the symmetry of the contract as a whole, such will be done and the remainder enforced. *Forrest Currell Lumber Co. v. Thomas*, 81 N.M. 161, 464 P.2d 891 (1970). "In determining whether ,or not a contract is divisible, the governing principle is the manifested intention of the parties in view of the nature of the contract...." *Arrow Gas Co. v. Lewis*, 71 N.M. 232, 239, 377 P.2d 655, 659 (1962). To ascertain the intent of the parties, the court first examines the terms of the contract. *Prudential Ins.*

*Co. of Am. v. Anaya*, 78 N.M. 101, 428 P.2d 640 (1967). When the issue to be determined rests upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 103, 678 P.2d 1170, 1178 (1984).

A divisible contract is "one under which the whole performance is divided into ... sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor." *Arrow Gas Co.*, 71 N.M. at 239, 377 P.2d at 659. Our review of the contract convinces us that there was no intention of the parties to execute a divisible contract. It is clear from its terms that the agreement contemplated an "all or none" exchange. There is nothing to indicate that the transfer of the two office buildings was to be divided into two sets of partial performances.

Arch argues that if Yu was unable to deliver, as agreed, the specified real estate which had an equity value of $100,000, then he was obligated to furnish substitute consideration such as cash. Arch contends that Yu contemplated other substitute consideration because Yu had drafted a different proposal that provided for the transfer of a condominium in California and $650,000 in exchange for the two office buildings.

Arch's contention is contrary to the terms of the contract as finally executed. In addition to the cash transfer, the agreement provided that two commercial buildings were to be exchanged for a specific residence and two specific lots. There was no contractual provision acknowledging the ability to substitute this consideration. Further, as previously discussed, the terms of the contract evince no intent to divide the consideration of the cash and the real estate between each respective office building. Consequently, Arch must be arguing that the court should alter or amend the terms of consideration. Under basic contract law, however, courts have no authority to alter or amend the terms of a contract

freely entered into between parties, but must enforce the contract as written. *State ex rel. Robins v. Hodges,* 105 N.M. 48, 728 P.2d 458 (1986).

Arch's only alternative theory is to seek recovery for damages on the contract because of Yu's breach. Arch maintains that Section 40–3–13 provides no basis to void the entire contract and deny him a claim for damages for the difference between the contract price and the market value of the buildings at the time of the closing, as well as consequential damages. We do not agree.

Section 40–3–13 represents a legislative policy decision to safeguard the interest of a spouse in community real property. In making this choice, the legislature has determined that this interest takes precedence over the principles of freedom of contract. Consequently, this Court held in *Sims v. Craig,* 96 N.M. 33, 627 P.2d 875 (1981), that an option agreement for the conveyance of community real property, which was void under Section 40–3–13, would neither be specifically enforced nor could damages be awarded for the contract's breach. Although the *Sims* court recognized that misrepresentation of the legal status of property could be grounds for other theories of recovery, here Arch only pled a cause of action for breach of contract. As in *Sims,* Arch could not maintain an action for damages on either the real estate exchange agreement or its addendum because they are void and unenforceable under Section 40–3–13.

Based upon our disposition of the first two issues, we need not address the remaining points raised by Yu.

We reverse the judgment of the trial court in its entirety and remand with instructions to enter judgment for defendant.

IT IS SO ORDERED.

SCARBOROUGH, C.J., STOWERS and WALTERS, JJ., and SOSA, Senior Justice, concur.