# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>February 6, 2018</u>

**No. A-1-CA-35518**

**NATIONSTAR MORTGAGE LLC, d/b/a
CHAMPION MORTGAGE COMPANY,**

 Plaintiff-Appellant,

v.

**SHEILA J. O'MALLEY,**

 Defendant-Appellee,

and

**TIMOTHY W. O'MALLEY, IF LIVING;
IF DECEASED THE UNKNOWN HEIRS
OF TIMOTHY W. O'MALLEY, DECEASED;
UNITED STATES OF AMERICA BY AND THROUGH
THE SECRETARY OF HOUSING
AND URBAN DEVELOPMENT; OCCUPANTS
OF THE PROPERTY,**

 Defendants.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Sarah C. Backus, District Judge**

McCarthy & Holthus, LLP
Joshua T. Chappell
Karen H. Weaver

Albuquerque, NM

Murr Siler & Accomazzo, P.C.
James P. Eckels
Jamie G. Siler
Denver, CO
Jared Daniel Albert Najjar
Santa Fe, NM

for Appellant

Dixon • Scholl • Carillo • P.A.
Orlando C. Martinez
Albuquerque, NM

for Appellee

**OPINION**

**BOHNHOFF, Judge.**

{1}     Plaintiff Nationstar Mortgage, LLC, d/b/a Champion Mortgage Co. (Nationstar), appeals the district court's order granting summary judgment in favor of Defendant Sheila J. O'Malley. The district court ruled that, pursuant to NMSA 1978, Section 40-3-13 (1993), a mortgage of residential property that Mrs. O'Malley's husband executed in favor of Nationstar was void because Mrs. O'Malley did not execute it as well. We hold that the mortgage was valid, because Mrs. O'Malley earlier had entered into a sole and separate property agreement that transmuted the couple's community property to her husband's separate property. We therefore reverse the summary judgment.

**BACKGROUND**

**A.     Factual History**

{2}     The salient facts are undisputed. In September 2010, Timothy (Husband) and Sheila (Wife) O'Malley acquired residential property in Taos, New Mexico (the Property); the deed conveyed title to them as joint tenants with right of survivorship. According to Wife's affidavit supporting her motion for summary judgment, Husband was an attorney and handled the couple's assets and finances. In early 2012, the O'Malleys were interested in purchasing an adjoining lot. "At that time, my husband

had me sign some documents in order to purchase the adjacent lot and combine it with the Property." One of those papers apparently was a "SOLE AND SEPARATE PROPERTY AGREEMENT AND CONVEYANCE" (SSPAC), which Husband and Wife executed in the presence of a notary on March 7, 2012. The SSPAC provides as follows:

> Pursuant to [NMSA 1978, Section 40-3-8(A)(5) (1990)], Timothy W. O'Malley and Sheila J. O'Malley, husband and wife, agree that the property described as [Property's legal description] is hereby designated as the separate property of Timothy W. O'Malley. Sheila J. O'Malley hereby expressly grants and conveys the above property to Timothy W. O'Malley with special warranty covenants. Sheila J. O'Malley further, expressly waives, relinquishes and releases any and all right, title, claim or interest in and to the above described property heretofore or hereafter acquired.

{3} The contemplated purchase of the adjoining lot did not occur. Instead, on April 16, 2012, Husband executed in favor of MetLife Home Loans, a division of MetLife Bank, N.A. (MetLife), an "Adjustable Rate Note (Home Equity Conversion)" and an "Adjustable Rate Deed of Trust (Home Equity Conversion)." The deed of trust states that, "THIS DEED OF TRUST SECURES A REVERSE MORTGAGE LOAN," and the parties otherwise characterize the transaction as a reverse mortgage loan transaction.[1] Both the SSPAC and the deed of trust (Reverse Mortgage) were

---

[1] With a reverse mortgage loan transaction, the debtor does not make any monthly payments of principal and interest, and instead the interest accumulates. Upon a specified event, e.g., the death of the debtor(s), the debt becomes due. United States Fed. Trade Comm'n, "Reverse Mortgages," *available*

2

recorded with the Taos County Clerk on April 20, 2012. The SSPAC's and Reverse Mortgage's recording information show filing times of 2:08:25 p.m. and 2:08:27 p.m., respectively.

{4}     On June 1, 2012, Husband deeded the Property to himself and Wife "as joint tenants with right of survivorship," i.e., the deed returned the Property to its pre-March 7, 2012, ownership status.

{5}     On October 22, 2012, MetLife assigned the Reverse Mortgage to Nationstar, which is a business name of Champion Mortgage Company. The assignment was recorded on November 8, 2012.

{6}     In the interim, Husband died on June 30, 2014. Wife states in her affidavit that she was not aware of the reverse mortgage transaction until sometime after her husband's passing when she received correspondence from Nationstar.

**B.     Procedural History**

{7}     In December 2014, Nationstar filed its complaint with the district court, seeking a judgment foreclosing on its security interest in the Property pursuant to the Reverse Mortgage and authorization to sell the Property to satisfy the underlying debt that Nationstar alleged totaled approximately $375,000. Nationstar did not claim that Wife was personally liable for the debt. In her answer, Wife generally denied or stated

_at_ http://www.consumer.ftc.gov/articles/0192-reverse-mortgages.

her lack of knowledge with respect to the complaint's allegations, but also asserted without elaboration affirmative defenses of "lack and failure of consideration," "mistake," and "fraudulent conduct and bad faith" on the part of Nationstar.

{8}     In December 2015, Wife filed a motion (the Motion) to dismiss the complaint for failure to state a claim, or in the alternative, for summary judgment. Based solely on her aforementioned affidavit testimony that "my husband had me sign some documents in order to purchase the adjacent lot and combine it with the Property," Wife asserted in her statement of undisputed material facts that, "Mr. O'Malley had [Mrs.] O'Malley sign a [SSPAC] under the pretense that it was necessary to facilitate the purchase of the adjacent lot and combine it with the Property." However, in her motion Wife did not otherwise claim, or even suggest, fraudulent or other nefarious conduct on the part of Husband, much less MetLife. On the contrary, her argument was strictly legal: the Property was community property; pursuant to Section 40-3-13 and NMSA 1978, Section 47-1-7 (1901), the Reverse Mortgage was void both because Wife did not sign it and because the March 7, 2012, SSPAC was not recorded before the Reverse Mortgage was executed. Similarly, she contended that, because the June 1, 2012, deed re-conveyed the Property to Husband and Wife, the subsequent assignment of the Mortgage from MetLife to Nationstar was void as well because both Husband and Wife failed to sign it. On the same day, Wife moved for a

4

protective order excusing her from responding to what she characterized as "voluminous sets of discovery" propounded by Nationstar until after the district court ruled on her Motion.

{9}     Nationstar timely responded in opposition to the motion for protective order but not the Motion. However, on January 21, 2016, Nationstar moved for leave to file a response to the Motion with a copy of the proposed substantive response attached. Nationstar argued therein that: pursuant to Section 40-3-8(A)(5), the Property was transmuted to Husband's separate property on March 7, 2012, as a result of Wife's execution of the SSPAC; the SSPAC was effective as against Wife notwithstanding the fact that it was not immediately recorded; Section 40-3-13 and Section 47-1-7 did not invalidate the Reverse Mortgage because as of April 16, 2012, the Property was no longer community property and, among other reasons, the SSPAC was not a power of attorney; because the Reverse Mortgage was not community property, Section 40-3-13 did not invalidate the October 22, 2012, assignment. Nationstar did not dispute Wife's statement of undisputed material facts. However, Nationstar requested that, assuming the district court did not deny the Motion on the basis of these legal arguments pursuant to Rule 1-056(F) NMRA, the district court should postpone ruling on the request for summary judgment until after Nationstar had an opportunity to conduct discovery.

5

{10} The district court scheduled a motions hearing for February 3, 2016. The morning of the hearing, Nationstar's counsel filed an affidavit pursuant to Rule 1-056(F), asserting that, in order to respond fully to Wife's summary judgment request, Nationstar needed answers to the discovery it already had propounded—and which was the subject of Wife's protective order motion—and might need additional discovery regarding "the facts surrounding . . . Defendant's acquisition of the property at issue, the execution and recording of the [SSPAC], the execution and recording of the [Reverse] Mortgage, . . . and the reconveyance of the property to [Husband and Wife]."

{11} During the hearing, the district court stated that, in view of the affidavit and documents attached and referred to in the Motion, it would treat the Motion as one for summary judgment. The court asked Wife's counsel to address Nationstar's argument that it would need additional time to conduct discovery. Wife's counsel stated that he did not believe there was a disputed issue of fact that was necessary to resolve the case, but also argued that the Rule 1-056(F) affidavit was not sufficiently specific and Nationstar had not disputed Wife's statement of undisputed material facts. The district court characterized Wife's motion as a legal argument, but then indicated its understanding that Wife's position was that she signed the SSPAC under false pretenses, that she thought it was executed for purposes of acquiring the

6

adjoining lot and it was not given for purposes of the reverse mortgage. Wife's counsel responded by stating that those facts were not needed to rule on the motion.

{12} The district court then ruled that it would grant Wife's motion. As grounds for its ruling, the court stated that Wife had made a prima facie showing that she was entitled to summary judgment and that Nationstar had not come forward with any facts to rebut that showing and that it would not be able to proffer any facts even if it was permitted additional discovery. In its written order, the district court deemed Wife's statement of undisputed material facts admitted by Nationstar, and stated that Wife had made a prima facie showing of entitlement to summary judgment based on Section 40-3-13, Nationstar had not rebutted that showing, and additional discovery was not necessary for adjudicating the Motion. Nationstar appeals.

**DISCUSSION**

{13} We review the district court order granting summary judgment under a de novo standard of review. *Cain v. Champion Window Co.*, 2007-NMCA-085, ¶ 6, 142 N.M. 209, 164 P.3d 90.

**A. Relevant Statutes**

{14} Section 40-3-8(A)(5), part of the Community Property Act of 1973 (the Act), NMSA 1978, Section 40-3-6 to -17 (1973, as amended through 1997), provides in pertinent part as follows:

7

A.	"Separate property" means:

. . . .

(5)	property designated as separate property by a written agreement between the spouses, including a deed or other written agreement concerning property held by the spouses as joint tenants or tenants in common in which the property is designated as separate property.

B.	"community property" means property acquired by either or both spouses during marriage which is not separate property. Property acquired by a husband or wife by an instrument in writing whether as tenants in common or as joint tenants or otherwise shall be presumed to be held as community property unless such property is separate property within the meaning of Subsection A of this section.

Section 40-3-8(A)(5), (B). Under Section 40-3-8(B), any property that is acquired by the marital community during marriage is presumptively community property. Section 40-3-12(A); *English v. Sanchez*, 1990-NMSC-064, ¶ 11, 110 N.M. 343, 796 P.2d 236; *Arch, Ltd. v. Yu*, 1988-NMSC-101, ¶ 7, 108 N.M. 67, 766 P.2d 911. Thus, the contours of community property are defined by the exclusions articulated in Section 40-3-8(A), one of which is property that is the subject of a sole and separate property agreement signed by both spouses. *See, e.g.*, *Estate of Fletcher v. Jackson*, 1980-NMCA-054, ¶ 46, 94 N.M. 572, 613 P.2d 714.

{15}	Section 40-3-13 provides in pertinent part as follows:

A.	Except for purchase-money mortgages and except as otherwise provided in this subsection, the spouses must join in all

8

transfers, conveyances or mortgages or contracts to transfer, convey or mortgage any interest in community real property and separate real property owned by the spouses. . . in joint tenancy or tenancy in common[.]

Any transfer, conveyance, mortgage. . . or contract to transfer, convey, [or] mortgage . . . any interest in the community real property or in separate real property owned by the spouses as cotenants in joint tenancy or tenancy in common attempted to be made by either spouse alone in violation of the provisions of this section shall be void and of no effect[.]

Except as provided in this section, either spouse may transfer, convey, [or] mortgage . . . separate real property without the other's joinder.

B. Nothing in this section shall affect the right of one of the spouses to transfer, convey, [or] mortgage . . . any community real property or separate real property owned by the spouses as cotenants in joint tenancy or tenancy in common without the joinder of the other spouse, pursuant to a validly executed and recorded power of attorney as provided in Section 47-1-7[.]

Section 40-3-13(A), (B).

{16} Section 40-3-13, while also part of the Act, is derived from predecessor statutes that generally required both spouses to join in the execution of certain real estate transactions. *See* 1915 N.M. Laws, ch. 84, § 1; 1907 N.M. Laws, ch. 37, § 16. The law was prompted by a perceived need to "protect [a] wife's interest in community property from her husband's otherwise almost exclusive control." *English*, 1990-NMSC-064, ¶ 14. Wife urges on the basis of case law precedent that the statute should be broadly construed to void mortgages and conveyances executed by married

9

individuals where their spouses do not also sign the instrument. She overstates the holdings of the cases. New Mexico courts consistently have ruled that an attempted conveyance of community property not joined in by both spouses is void and a nullity as opposed to only voidable. *See, e.g.*, *Jenkins v. Huntsinger*, 1942-NMSC-011, ¶ 14, 46 N.M. 168, 125 P.2d 327. Indeed, in *Hannah v. Tennant*, 1979-NMSC-009, ¶ 10, 92 N.M. 444, 589 P.2d 1035, our Supreme Court held that a buyer on a real estate purchase agreement could raise, as an affirmative defense to the selling spouses' suit to enforce the agreement, the fact that one of the selling spouses had not joined in executing the agreement, notwithstanding the fact that both selling spouses later joined as plaintiffs in the specific performance action. In recent years, however, there has been no further expansion of Section 40-3-13 beyond its plain language. In 1995, the Legislature effectively mooted *Hannah*'s holding by adding the second sentence of Section 40-3-13(B), which permits a non-signing spouse to ratify an otherwise void transfer, conveyance, or mortgage. *See* N.M. Laws 1993, ch. 165, § 1. In *English*, our Supreme Court declined "to expand the application of a nullity or wholly-void doctrine beyond its present limits. . . . [A] sales contract, valid at the time of execution, is valid as to after-acquired separate property, once transmuted by written agreement between the spouses." 1990-NMSC-064, ¶¶ 20, 22. In *Huntington Nat'l Bank v. Sproul*, 1993-NMSC-051, ¶ 31, 116 N.M. 254, 861 P.2d 935, the Court

declined to read into Section 40-3-13 "non-existent" language to require joinder of both spouses in creation of community debt that might later be satisfied out of community property when the creditor obtains and records a judgment.

{17} Past judicial construction of Section 40-3-13 has simply applied the statute in accordance with its plain language, in particular, that "void and of no effect" means exactly that. Thus, one lesson of these decisions is that it is important to carefully read the language of the statute. In particular, Section 40-3-13 nullifies transfers, conveyances, and mortgages signed by only one spouse only if the subject property is community property. If at the time of the transaction the property is separate property, Section 40-3-13 is simply inapplicable.

{18} *English* illustrates this point. Donald English entered into a real estate contract to sell a parcel of land to the Sanchezes: upon the Sanchezes' completion of a series of installment payments over time, Donald would deliver a deed for the parcel. At the time the contract was executed, however, title to the parcel was held by a corporation owned by Donald and his wife, Emma. Donald, as president of that corporation, subsequently deeded legal title to the property to another corporation that he and Emma owned. Some years later, the Sanchezes defaulted on their payments under the contract. At that point Donald, as president of the second corporation, conveyed it to himself and then brought suit to enforce the contract against the Sanchezes. The

Sanchezes moved for summary judgment, claiming that Section 40-3-13 invalidated Donald's title. At that point, and prior to the district court's consideration of the summary judgment motion, Donald and Emma entered into an agreement designating the parcel as Donald's separate property. *English*, 1990-NMSC-064, ¶ 4.

{19} Our Supreme Court initially noted that, because the doctrine of after-acquired property, *see, e.g.*, *Hays v. King*, 1989-NMSC-078, ¶ 8, 109 N.M. 202, 784 P.2d 21 (adopting the doctrine), permits a person to "enter into a valid contract to sell real estate to which he has no title, provided he is able to carry through with the transaction after the final payment is made or tendered," the fact that Donald originally did not hold title to the parcel personally did not necessarily bar him from enforcing the real estate contract. *English*, 1990-NMSC-064, ¶ 7. The Court next determined that Section 40-3-13 did not invalidate the original transaction based on Emma's failure to sign the real estate contract, because at that time the parcel was not community property but rather corporate property and a corporation can convey corporate real estate "without the restrictions placed upon the sale of community real property." *English*, 1990-NMSC-064, ¶ 8. "At that time the contract did not attempt to convey an interest in community real property." *Id.* ¶ 20; *cf. Dotson v. Grice*, 1982-NMSC-072, ¶ 10, 98 N.M. 207, 647 P.2d 409 (holding that upon contribution of property owned by a married couple to general partnership, it no longer has

community property status and Section 40-3-13 is not applicable; instead, its conveyance is governed by partnership law). The Court then determined that, when Donald took title to the parcel from the corporation, it became community property. At that juncture, "the contract was void as to after-acquired community property[.]" *English*, 1990-NMSC-064, ¶ 13. However, the transmutation of the parcel into separate property changed the result:

> [A] sales contract, valid at the time of execution, is valid as to after-acquired separate property, once transmuted by written agreement between the spouses. The fact that the property was held for an interim as an asset of the community may have rendered the contract void for purposes of selling community property, but the interim holding of the property by the community need not void the contract for the purpose of selling separate property that is acquired through transmutation.

*Id.* ¶ 22.

{20}     Section 47-1-7, incorporated by reference in Section 40-3-13(B), provides as follows:

> All powers of attorney or other writings containing authority to convey real estate, as agent or attorney of the owner of the same, or to execute, as agent for another, any conveyance of real estate, or by which real estate may be affected in law, or equity, shall be acknowledged, certified, filed and recorded, as other writings conveying or affecting real estate are required to be acknowledged. No such power of attorney, or other writing, filed and recorded in the manner prescribed in this section, shall be considered revoked by any act of the party executing the same, until the instrument of writing revoking the same, duly acknowledged and certified to, shall be filed for record and recorded in the office of the county clerk where said power of attorney or other writing is filed and recorded.

**D.** **The SSPAC Was Not Void as a Result of Wife's Non-Joinder or the Delay in Recording It**

**1.** **The Property Was Separate Property When the SSPAC Was Executed**

{21} Relying on *Hannah*, Wife contends that because she did not join in it and she had not given Husband a power of attorney, pursuant to Section 40-3-13(A) and (B), the Reverse Mortgage was void. Wife's argument assumes, however, that the Property was community property as of April 16, 2012, when the Reverse Mortgage was executed. As our Supreme Court observed in *English*, "The chain of title to this property and its relation to the time the [Reverse Mortgage] was executed are important factors in the resolution of the questions raised in this appeal." 1990-NMSC-064, ¶ 7. The March 7, 2012 SSPAC, which Wife acknowledges she signed, rebuts the presumption that the Property was community property on April 16, 2012. Instead, the SSPAC transmuted the Property into Husband's separate property and he had authority to unilaterally grant a mortgage.

**2.** **Recording Was Not Necessary for the SSPAC To Be Effective Against Wife**

{22} As noted above, Wife cannot claim that the Reverse Mortgage was void as a result of being recorded before the SSPAC: the SSPAC was recorded first in time. Instead, and to nullify the otherwise obvious effect of the SSPAC, she finds significance in the fact that Husband must have *executed* and/or *delivered* the Reverse

14

Mortgage to Nationstar at some time prior to the recording of the SSPAC. On that basis, she maintains her position that the Reverse Mortgage was void for lack of her joinder. This argument fails for three reasons.

{23} First, the SSPAC itself does not require that it be recorded to be effective. On the contrary, in the SSPAC Husband and Wife agreed "that . . . [the Property] is *hereby* designated as the separate property of [Husband]." (Emphasis added.) "Hereby" means "by this means; esp[ecially]: by means of this act or document." *Webster's Third New Int'l Dictionary* 1058-59 (Unabridged ed. 2002). In the context of the SSPAC, the word most reasonably connotes Husband's and Wife's understanding that the transmutation of the Property from community property to separate property was effective on the document's execution as opposed to its recording. *Cf. Suchan v. Suchan*, 682 P.2d 607, 613 (Idaho 1984) (holding that married couple's agreement that separate property was "hereby declared to be community property" expressed intention "that the separate property described in the agreement was to be transmuted to community property immediately upon the execution of the agreement." (emphasis and internal quotation marks omitted)).

{24} Second, Section 40-3-8(A)(5) does not require that a sole and separate property agreement must be recorded to be effective. Indeed, we can infer from Section 47-1-7 that if the Legislature intends that a real estate instrument be effective only upon

15

recording, it explicitly will so provide.

{25} Third, and perhaps most fundamentally, Wife was a party to and thus had actual knowledge of the SSPAC. NMSA 1978, Section 14-9-1 (1991), generally requires that deeds, mortgages and "other writings affecting the title to real estate" shall be recorded in the office of the clerk of the county in which the real estate is located. *Id.* But the failure to record an instrument affecting title to real estate generally does not invalidate it, particularly as against a party to the instrument or other person with actual knowledge of it, and instead only negates any constructive notice of it. "Generally, non-compliance with the recording statutes does not affect the validity of the instrument itself, but makes it ineffectual as constructive notice." *Amethyst Land Co. v. Terhune*, 2014-NMSC-015, ¶ 11, 326 P.3d 12. "The general rule is that an unacknowledged deed is binding between the parties thereto, their heirs and representatives, and persons having actual notice of the instrument." *Baker v. Baker*, 1977-NMSC-006, ¶ 4 n.1, 90 N.M. 38, 559 P.2d 415.

**3.      Section 47-1-7 Does Not Invalidate the SSPAC**

{26} Wife, however, invokes Section 47-1-7's recording requirement, because it is incorporated into Section 40-3-13(B). By a fair reading of its terms, Section 47-1-7 requires that, to be effective, a power of attorney or other agreement authorizing one party to convey real property owned by another must be recorded. Wife contends that

16

the statute applies not only to powers of attorney and "other writings containing authority to convey real estate" but also to "all . . . other writings . . . by which real estate may be affected in law, or equity[.]" She characterizes the SSPAC as falling within both of these descriptions. Based on this legal premise, she insists that, because the Property had not been recorded at the point that the Reverse Mortgage was given, the Property remained as community property and, pursuant to Section 40-3-13, the Reverse Mortgage was void. We are not pursuaded.

{27}    First, we reject Wife's broad construction of Section 47-1-7's first sentence to apply to, and require recording as a predicate to effectiveness of, not only all writings containing authority to convey real estate but also other writings "by which real estate may be affected in law, or equity." Doing so would conflict with the generally accepted rule, discussed above, that real estate instruments are effective as to their signatories and their privies and others with actual notice regardless of recording. Further, the second sentence of Section 47-1-7 indicates that "other writings" as used in the first sentence cannot be understood to refer to more than a power of attorney or other writing that is executed by one party and can be revoked. So limited, a sole and separate property agreement executed by two spouses does not fit within the scope of "other writing."

{28}    Second, even assuming for the sake of argument that Section 47-1-7's

recording requirement applied to more than just powers of attorney, Section 40-3-13(B) incorporates the statute only as it applies to powers of attorney. The scope of Section 47-1-7 is irrelevant to the construction of Section 40-3-13 except to the extent that Section 40-3-13(B)'s power of attorney exception to the both-spouse joinder requirement mandates that the power of attorney be recorded.

{29} Third, we reject Wife's characterization of the SSPAC as a power of attorney or other agreement containing authority to convey real estate that was subject to Section 47-1-7. Wife herself executed the SSPAC and conveyed the Property to Husband as his separate property. As a result, there simply was no need to authorize Husband to do anything on Wife's behalf with respect to her former interest in the Property. Consistent with that reality, the SSPAC states that the parties were entering into it pursuant to Section 40-3-8(A)(5), not Section 47-1-7.

{30} Fourth, and as stated above, the SSPAC was recorded. Therefore, even assuming Section 47-1-7 as incorporated into Section 40-3-13(B) was somehow applicable to the transaction at issue herein, its requirements were satisfied. "There is no requirement that an instrument be recorded within a particular period of time." *Amethyst Land Co.*, 2014-NMSC-015, ¶ 12. In addition, also as stated above, because Wife had actual notice of and in fact joined in the SSPAC, any failure to record it did not invalidate it as to her. *See id.* ¶ 11.

{31} Fifth, we reject the suggestion that the incorporation of Section 47-1-7 into Section 40-3-13(B) somehow changes the meaning of Section 40-3-13(A). Section 40-3-13(B) simply articulates an exception to Section 40-3-13(A)'s requirement that both spouses join in a mortgage, conveyance, or other transfer of community property. It does not alter the fact that one spouse remains free to unilaterally convey property that he or she holds as separate property. Compliance with Section 47-1-7—whatever its scope—as incorporated into Section 40-3-13(B) is necessary only if the transaction otherwise would be invalidated pursuant to Section 40-3-13(A). Thus, a spouse's authorization to convey real property is necessary only if the property is held by the community. Because the Property was Husband's separate property on April 16, 2012, Section 40-3-13 was wholly inapplicable.

{32} To conclude, Wife assumes that Section 40-3-13(A) requires both spouses join in any mortgage or conveyance of *any* property acquired during marriage unless the exception articulated in Section 40-3-13(B)—one spouse holds a power of attorney for the other spouse—is applicable. The flaw in Wife's analysis is that she fails to acknowledge that the scope of Section 40-3-13(A), by its terms, generally is limited to community property or separate property held as joint tenants or tenants in common. Because the SSPAC transmuted the Property from community property to Husband's separate property on March 7, 2012, Section 40-3-13 was simply

inapplicable to the April 16, 2012, Reverse Mortgage transaction.

**E.      The October 22, 2012 Assignment of the Reverse Mortgage Was Not Void as a Result of Husband's and Wife's Non-Joinder**

{33}      Wife also argues, again on the basis of Section 40-3-13, and because the Property had reacquired its community property status as of June 1, 2012, that MetLife's October 22, 2012, assignment of the Reverse Mortgage to Nationstar was invalid for lack of her joinder. By Wife's logic, Husband's failure to sign the assignment also would operate to void it. While it is unclear whether the district court ruled on this argument in granting summary judgment in favor of Wife, we reject it.

{34}      We note that the June 1, 2012, reconveyance of the Property to the marital community was not free and clear, and instead was subject to the Reverse Mortgage. "[T]he lien acquired by the mortgage upon the property . . . [cannot] be divested either by the levying of process upon the mortgaged property, or the sale thereof by the mortgagor, or under execution." *Chavez v. McKnight*, 1857-NMSC-001, ¶ 11, 1 N.M. 147. *See Avondale Shipyards, Inc. v. Tank Barge ETS 2303*, 754 F.2d 1300, 1309 (5th Cir.1985) (It is manifest that, according to settled security principles, the sale of property encumbered by a mortgage does not itself extinguish the lien of the mortgage.").

{35}      The point of Section 40-3-13 is to bar one spouse from conveying or encumbering community property—or separate property held in joint tenancy or

20

tenancy in common—without the consent or authorization of the other. Thus, Section 40-3-13(A) voids any such conveyance or mortgage "attempted to be made by [one] spouse alone." The statute does not void transactions such as mortgage assignments that, while they may affect community property, do not require the consent of *either* spouse. Even assuming *arguendo* that Husband and Wife otherwise might have standing as mortgagors to object to assignment of the Reverse Mortgage, *but cf. Flagstar Bank, FSB v. Licha*, 2015-NMCA-086, ¶ 18, 356 P.3d 1102 (stating that mortgagors lacked standing to challenge assignment of mortgage on basis of lack of consideration), *abrogated on other grounds by BOKF, N.A. v. Gonzalez*, No. A-1-CA-35691, 2017 WL 2099830, ¶ 3, ___-NMCA-___, ___ P.3d ___ (June 28, 2017) (non-precedential) (stating that mortgagors lacked standing to challenge assignment of mortgage on basis of lack of consideration), the terms of the Reverse Mortgage provided for its assignment at MetLife's option. Thus, the October 22, 2012, assignment was not subject to invalidation for failure to comply with Section 40-3-13.

**F.    Wife's "Pretense" Theory**

{36}    Wife claims on appeal that "MetLife was complicit in trying to circumvent [Section] 40-3-13" and that the SSPAC was "an unrecorded, fraudulently obtained, consideration-less conveyance of real community property[.]" We decline to address these contentions for two reasons.

21

{37} First, to our understanding, the district court did not base its decision on such an argument. It is true that near the end of the hearing on the summary judgment motion the district court stated its understanding of the import of the "under the pretense" phrase in Wife's statement of undisputed facts: Wife understood that the only purpose of the SSPAC was to facilitate the acquisition of the lot that adjoined her and her husband's residence. But Wife's counsel then added that this fact was not necessary to rule on the motion. Further, in its oral explanation of its ruling, the court stated that Nationstar would not be able to rebut Wife's case for summary judgment even assuming it was permitted its requested additional discovery which included, among other subjects, the facts surrounding Husband's and Wife's signing of the SSPAC. For that reason, the district court denied Nationstar's request that the court postpone ruling on the motion until after it could conduct discovery. We understand from these statements that the district court did not rely on any consideration of possible mistake or fraud in reaching its decision, and instead ruled solely on the basis of Wife's legal arguments regarding the meaning of Sections 40-3-13 and 47-1-7.

{38} Second, while as a general matter this Court will affirm the district court if its decision is right for any reason, even one that it did not consider, *see Hawkins v. McDonald's*, 2014-NMCA-048, ¶ 23, 323 P.3d 932, we will not consider bare

22

assertions that are not developed and supported by legal authority and analysis. *See, e.g., Curry v. Great Nw. Ins. Co.,* 2014-NMCA-031, ¶28, 320 P.3d 482 (declining to address argument where appellee provided no authority); *State ex rel. Office of State Eng'r v. Lewis*, 2007-NMCA-008, ¶ 74, 141 N.M. 1, 150 P.3d 375 (declining to address the issue where appellant provided no supporting "evidence, discussion, or authority"); *Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC*, 2006-NMCA-081, ¶ 25, 140 N.M. 41, 139 P.3d 201 (declining to address argument where appellee provided no authority, *overruled on other grounds by Miller v . THI of N.M.*, No. A-1-CA-29459, 2009 WL 6575071, ___-NMCA-___, ¶ 1, ___ P.3d ___ (Aug. 28, 2009) (non-precedential). Wife never developed her "pretense" suggestion below. In her answer to Nationstar's complaint, Wife asserted without elaboration affirmative defenses of "lack and failure of consideration," "mistake," and "fraudulent conduct and bad faith" on the part of Nationstar. However, other than perhaps the possible[2] connotation implicit in the word "pretense," she did not discuss or even assert any of these or other claims of improper conduct on the part of Husband much less MetLife as a basis for voiding the SSPAC and thus summary judgment. Wife also has not developed those theories on appeal. In particular, she does not provide any legal

---

[2]"[P]resentation of what is deceptive or hypocritical" is only one of several definitions of "pretense." *Webster's Third Int'l Dictionary* 1797 (Unabridged ed. 2002).

authority or otherwise address any fraud- or mistake-based theory for voiding the SSPAC. Instead, she relies solely on her legal arguments about the scope and legal consequences of Section 40-3-13 and Section 47-1-7.

{39}     Under these circumstances, we decline to address, as a possible basis for affirming, the unsupported possibility of wrongful conduct on the part of Nationstar or its predecessor-in-interest, MetLife, particularly where neither Wife's affidavit nor even her statement of undisputed material facts implicates MetLife in Husband's "pretense."[3] There are simply too many unanswered questions based on the current state of the record.

**CONCLUSION**

{40}     On the basis of the summary judgment record before the district court, in particular, the SSPAC executed by Husband and Wife, Nationstar had rebutted the presumption that the Property was community property on April 16, 2012, when Husband executed the Reverse Mortgage. As a result, the Reverse Mortgage was not void pursuant to Section 40-3-13. Section 40-3-13 also did not operate to void the October 22, 2012, assignment of the Reverse Mortgage. For these reasons, the district

---

[3]Similarly, because Wife has not raised any claims of breach of fiduciary duty or constructive fraud, it also is unnecessary to consider the discussion regarding adequacy of consideration and independent legal advice found in our recent opinion in *Gabriele v. Gabriele,* ___-NMCA-___, ___ P.3d ___ (No. A-1-CA-34523, Jan. 31, 2018).

24

court erred in granting summary judgment in favor of Wife. We therefore reverse the district court's grant of summary judgment and dismissal of Nationstar's complaint, and remand for further proceedings consistent with this opinion.

{41}    **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**


**WE CONCUR:**


_____

**MICHAEL E. VIGIL, Judge**


_____

**M. MONICA ZAMORA, Judge**